## THE PEOPLE, ex rel. Dubois, *vs.* THE BOARD OF SUPERVISORS OF ULSTER COUNTY.

The 7th section of the 1st article of the constitution of 1847, prescribing the mode in which the compensation for private property taken for any public use shall be ascertained, is not repugnant to the act of May 10th, 1845, "to reduce the number of town officers." Nor is that act abrogated by the 17th section of the 1st article of the constitution.

The language of the 7th section of the 1st article of the constitution is not applicable to cases in which assessments have been made, and from which assessments appeals were pending when the constitution took effect. The words used are prospective, and are applicable only to new and original cases of assessments occurring after the 1st of January, 1847, *it seems.*

The section of the constitution which provides that assessments shall be made by a jury, or by commissioners, *as shall be prescribed by law,* contemplates some act of legislation on the subject; and until that has taken place, no damages can be assessed in pursuance of the constitutional provision.

Accordingly *Held* that county judges, appointed in November, 1846, by the board of supervisors, to assess the damages sustained by the owner of land taken for a highway, had power, in March, 1847, to act under that appointment; and that an assessment made by them was legal and binding upon the parties. And that for the refusal of the board of supervisors to cause the damages thus assessed, to be levied and collected, a mandamus would lie, on the relation of the owner of the land.

THIS was a demurrer to a return to an alternative mandamus directed to the board of supervisors of Ulster county. The facts are sufficiently stated in the opinion of the court.

*James O. Linderman,* for the relator.

*M. Schoonmaker,* for the defendants.

*By the Court,* PARKER, J.　In May, 1846, the commissioner of highways of the first class of the town of New Paltz, in the county of Ulster, together with two assessors of the same town, proceeded, under the 5th section of the act entitled " an act to reduce the number of town officers," &c. passed May 10th, 1845, to assess the damages the relator had sustained by reason of the laying out of a highway through his land in said town. The relator, conceiving himself aggrieved by said assessment, procured the summoning of a jury to review such assessment, under the 6th section of the said act.　And the jury found, by their verdict, that no damages had been sustained by the relator.　The relator, being dissatisfied with that verdict, applied to the board of supervisors of said county for relief.　The assessment was thereupon, on the 11th of November, 1846, referred, by the board of supervisors, for re-consideration, to three of the county judges of said county.　The judges met on the 10th of December, 1846, and viewed the premises, and then adjourned till the 15th of January, 1847, when they proceeded to a further hearing of the matter; and on the 10th of March, 1847, they made their certificate that they had assessed the damages sustained by the relator at $84,50.　In November, 1847, at the annual meeting of the board of supervisors, the relator applied to have the supervisors cause the amount of his damages to be levied and collected.　But the board refused, on the ground that the proceedings before the county judges, after the 1st of January, 1847, were void, the act under which they were appointed having been abrogated by the provisions of the new constitution.　These facts appearing by the return to an alternative mandamus, the relator demurred, and the question of law is thus presented to this court.

The new constitution provides, (*art.* 1, § 7,) as follows: " When private property shall be taken for any public use, the compensation to be made therefor, when such compensation is

not made by the state, shall be ascertained by a jury, or by not less than three commissioners appointed by a court of record as shall be prescribed by law." It is claimed by the counsel for the defendants, that this provision is repugnant to the act of 1845, inasmuch as it provides a different mode of ascertaining the compensation. This provision does not specifically abrogate the act of 1845; and if it does in effect, it must be because the whole provision, taken together, is inconsistent with the act in question. This is the point, therefore, first to be examined.

I think it may well be doubted whether the language of the constitution above quoted is applicable to cases in which assessments have been made, and from which assessments appeals were pending, when the new constitution took effect. The words used are prospective, and appear to be applicable only to new and original cases of assessments occurring after the 1st of January, 1847.

Besides, the constitution provides that assessments shall be made by a jury or by commissioners *as shall be prescribed by law ;* and until there is some legislation on the subject, no damages could be assessed, unless under the existing statute. Can it be said this provision becomes repugnant to the act of 1845 before the legislature shall have prescribed how assessments shall be made, and whether by a jury or by three commissioners? Without legislation the provision of the constitution could not be enforced; and it must therefore remain nugatory until the legislature discharge the duty imposed on them, and say by whom, and in what manner, a jury may be summoned, or commissioners appointed.

In deciding upon the effect of this provision of the constitution, we are not without authority. I think the case of *Groves* v. *Stoughton,* (15 *Peters,* 449,) is in point. That was an action brought on a promissory note given in the state of Mississippi, for the purchase of slaves in that state. The slaves had been imported in 1835 and 1836, as merchandise, for sale, into Mississippi, by a non-resident of that state. By the constitution of Mississippi, adopted in 1832, it was provided that "the introduction of slaves into this state, as merchandise, or for sale,

shall be prohibited after the 1st day of May, 1833;" with an exception as to such as might be introduced by actual settlers, previous to the year 1845. No law on the subject of the prohibition was passed till 1837. The parties to the note contended that the contract was void, asserting that it was made in violation of the provision of the constitution, which, it was insisted, was operative after May 1, 1833, without legislative enactment to carry the same into effect. But the supreme court of the United States held otherwise. And Thompson, J., in giving the opinion of the majority of the court, after quoting the above extract from the constitution, said, "This obviously points to something more to be done, and looks to some future time, not only for its fulfilment, but for the means by which it was to be accomplished. Under the constitution of 1817 it is declared that the legislature shall have power to prevent slaves being brought into the state as merchandise. The time and manner in which this was to be done was left to the discretion of the legislature. And by the constitution of 1832, it was no longer left a matter of discretion, when the prohibition is to take effect; but the 1st day of May, 1833, is fixed as the time. But there is nothing in this provision which looks like withdrawing the whole subject from the action of the legislature. On the contrary, there is every reason to believe, from the mere naked prohibition, that it looked to legislative enactments to carry it into full operation. And indeed this is indispensable. There are no formalities or sanctions provided in the constitution for its due and effectual execution." The judgment of the circuit court in favor of the plaintiffs was affirmed. The same question was again presented to the supreme court of the United States in *Rowan and others* v. *Runnels*, as reported in 5 *Howard's U. S. Rep.* 134, and the same construction was again given to that provision of the constitution.

The case we are now considering is much stronger for the relator. Here the intention of the framers of the constitution to call for legislative action, is not left to implication, and admits of no doubt. The language employed is "as shall be prescribed by law." There had been no legislation under this

provision, at the time of the hearing before the judges of the county court, and I think their act was legal and binding upon the parties.

If I am correct in the conclusion at which I have arrived, that the act of 1845 is not repugnant to the seventh section of the first article of the constitution, then it follows that the act of 1845 is not abrogated by the 17th section of the 1st article, which declares that all acts of the legislature repugnant to the constitution are thereby abrogated. On the contrary, the relator is left to the full benefit of that portion of the 17th section, which provides that "such acts of the legislature of this state as are now in force, shall be and continue the law of this state, subject to such alterations as the legislature shall make, concerning the same."

The construction I have given to the 7th section of the first article of the new constitution, is thus not only sustained by authority, and is indispensable to prevent a failure of justice, but is also, I think, in accordance with the general spirit and object of the constitution, as evinced by other parts of that instrument. By the 8th section of article 14 of the constitution, the office of county judge was declared not to be abolished till the 1st of July, 1847; and by the 11th section of the same article, all judicial officers in office when the constitution took effect, were to continue to receive such fees and perquisites as were then authorized by law, until the 1st of July, 1847. The three county judges had therefore full power to act under the appointment of the board of supervisors, in March, 1847, and to receive the compensation provided by law.

I think, therefore, the board of supervisors erred in refusing to audit the claim of the relator. His remedy was by mandamus. ( *The People* v. *Supervisors of Columbia,* 10 *Wend.* 363. *Moulton* v. *Mayor of New-York, Id.* 393. *Johnson* v. *Supervisors of Herkimer,* 19 *John. Rep.* 272. *Parish* v. *Supervisors of St. Lawrence,* 5 *Cowen,* 292.)

There must be judgment for the plaintiff, on the demurrer, with costs.