Van Dusen et al., Appellants, v. Fridley, Respondent.

**Statutes — Construction—Counties — Creation.**

An act, chap. 38, L. 1885, creating a new county by the segregation of others, contained a provision that the act should not go into force unless " a majority of the legal voters of said Kidder county and of said range 69 shall vote in favor of said segregation," *held*, that a separate (not an aggregate) majority vote of the county and the range would be required in order to organize the county.

(Argued Feb. 14, 1889; affirmed Feb. 19; opinion filed Oct. 9, 1889.)

APPEAL from the district court, Kidder county; Hon. Roderick Rose, Judge.

*Ball, Wallin & Smith,* for appellants.

The intention of the legislature was to submit the act to the approval of a certain body of voters interested in the measure. That is, to a single body of voters residing in different counties who were to vote upon the question in different voting precincts at the call and supervision of distinct boards of commissioners. Under the facts existing, and with reference to which the act was framed and must be construed, it was so worded that the vote provided for was to be taken, returned and canvassed under the existing election machinery centering at the county seats of the respective counties. In order to make the election machinery so located available, it became necessary to use apt words; hence we find frequent reference to the voters in Kidder county, and also to the voters in range 69 of Stutsman county; and likewise find appropriate language to convey the idea that these voters, who resided in localities territorially

distinct, should vote in their proper precincts, and return their votes to the proper county seat. It is obvious that the use of some such discriminating language was unavoidable in order to secure the objects in view and to use the separate election machinery which the act declared should be used. Yet it is from such language, necessarily employed to meet the circumstances of the case, that it is sought to have the court inject the idea of plurality, or majorities, into the law when there is not a word in the act conveying such a meaning. The words used import but a single majority, a majority of the voters to whom the act was submitted, residing in localities distinct from each other.

The question presented is, whether the court will insert between the word " and " and " of " in the second line of section 3 the words, " a majority." The effect of doing so is obvious. It exactly reverses the meaning of the words employed by the legislature. Thus changed, the act creating Stanton county could not become a law without double majorities. Courts will refuse to import words or ideas for the purpose of interpretation, when by so doing, the plain meaning of the law, as it is expressed, will be reversed. § 929, C. C.

It does not answer to say that after the words sought to be injected are actually introduced, a clear meaning will be expressed, for as between two meanings which may be equally clear a court will prefer that which can be obtained from the language actually employed, rather than one which is only reached by interpolations of either words not used, or ideas not expressed.

*Joseph W. Walker* and *W. F. Cochrane,* for respondent.

The question was to be submitted to two distinct classes of citizens. With this in view by giving to the word " also " its proper meaning we have that, that portion of Kidder county and the portion of Stutsman county, hereby proposed to be segregated, shall not be cut off unless the question of segregation shall be first submitted to a vote of the people of Kidder county, and IN LIKE MANNER, FURTHER, TOO and IN ADDITION TO this, to the voters of that part of range 69 proposed to be detached from Stutsman county.

Without so rendering the language some of the words would

have no meaning. For instance, what could possibly be derived from the words, "and of said range 69," without first asking and answering the question : WHAT, of said range 69? When, in construing a sentence, a question must be mentally asked, in order that a meaning may be gathered, it is evident that there is an ellipsis, and that the words composing the correct answer to the question thus asked must be supplied. The words composing the answer, WHAT, of said range 69, must certainly be read between the conjunction "AND" and the preposition "OF," in order to avoid a meaningless absurdity. A correct answer to the question must not be given arbitrarily, it must be conveyed directly from the language used in the same sentence, and by means of unerring rules. There are two distinct things whose relation is shown by the preposition used ; or as grammarians express it, two terms of relation — an antecedent and a subsequent term. In the language under consideration we find the subsequent term expressed, viz. : the words "said range 69 " next following the preposition OF ; but the antecedent term is omitted and must be supplied. Hence, whatever that antecedent term may be, it is manifest that the words necessary to express it must form the correct answer to our question, and must be the words to be supplied. To ascertain the missing term we have the rule that when two terms connected, refer jointly to a third, they must be adapted to it AND TO EACH OTHER, both in sense and in form. Brown, Inst. of English Grammar, p. 201.

Plainly then, the omitted words next preceding the preposition " OF " in the second term must be the same as the expressed words next preceding the preposition performing the same office in the first term, which are: " a majority of the legal voters." It will not suffice to cut off the words " a majority " and supply only the words " of the legal voters ; " for then another ellipsis would occur, next preceding the preposition constituting the first of these words, whose antecedent term of relation would have to be supplied by mentally asking and answering the question : WHAT, of the legal voters? And our answer deduced according to the foregoing rules, would be : " a majority." Nor will it do to leave out the words " a majority of " and supply only the words

occurring between the two prepositions found in the first of said two connected terms, viz.: " the legal voters."

Had the intent of the lawmakers been as claimed, they would have simply omitted the repetition of the preposition " OF " as it occurs next preceding its subsequent term of relation, " said range 69." Then these words and the words " said Kidder county " would have jointly formed the double subsequent term of relation to the preposition " OF " occurring next preceding the words " said Kidder county ; " and the antecedent term of relation to that preposition being already expressed, there would have been no ellipsis, and the sense of the language would have required but a " single," or " total," majority.

Were there any doubt as to the meaning of these material parts of the act it would be cleared up by considering the other parts. In the light of those provisions it is manifest the position of counsel is not tenable. At the outset, they are confronted with the question : why did not the act require that the elections should be held on the same day in both localities? The only limitation was, that each of the authorities named should call an election within sixty days. Again, each of the independent boards is made a canvassing board, there being no provision for any joint canvass. To uphold the theory of the other side we must admit that the law-makers contemplated the submission of the question of segregation to a vote of the people of one county, at a special election on one day, and then to the voters of another county, at a special election on another day, without reference to the result occurring at the first election. The legislators could not have intended such an absurdity.

Again, two distinct and essentially different questions were required to be submitted to the two bodies of voters. To the people of Kidder county the question of the DIVISION of their county, to the voters of that part of range 69 proposed to be detached from Stutsman county the question of the SEGREGATION of their territory from the county to which it belonged. The proposed division of Kidder county meant to her people the taking from them of one-third or more of their territory and source of revenue, and they alone were interested in it. They also had

the right to hold it for its just proportion of any liabilities that might have been incurred.

Here we believe we have the reason for the different phraseology in describing the two classes of voters. The one was aptly described as " the people of Kidder county," because there it was a question of LITERAL DIVISION of their county. The other, simply as " the voters of that part of range sixty-nine (69) proposed to be detached from Stutsman county," an apt description also; because that area formed but a small portion of Stutsman county and the question of CUTTING IT OFF was not one of such vital interest to the people of that county, yet, the voters residing there had certain rights to be considered.

TRIPP, C. J. This is an action brought by the plaintiffs to restrain the defendant, as treasurer of Kidder county, from selling their real property for taxes alleged to be illegal and void. The legislature of 1885 attempted to create the county of Stanton out of portions of the counties of Kidder and Stutsman. The new county so sought to be created took from the county of Kidder about one-third of its area, and from the county of Stutsman a part of range 69. By the terms of the act, the segregation of such territory from the two counties, and the creation of such new county of Stanton, was made to depend upon the vote of the people of Kidder county, and of that portion of Stutsman county sought to be included within the new county so created. A number of irregularities as to the assessment of the alleged illegal tax was set out in the complaint, and put in issue by the answer, but they were expressly waived at the hearing in the court below; and by stipulation of counsel the right of plaintiffs to maintain their action was made to depend solely upon the question whether the county of Stanton was ever legally created. If it was, then the defendant, as treasurer of Kidder county, would have no authority or jurisdiction to make sale of their lands in Stanton county; and if it was not, then it was conceded that, as the tax was legal, the defendant would have jurisdiction, and the complaint should be dismissed. The act, after giving the boundaries of the proposed new county, provides as follows : " § 2. Provided, however, that a portion of Kidder county and a portion of Stutsman county, hereby

proposed to be segregated, shall not be cut off unless the question of segregation shall be first submitted to the vote of the people of Kidder county, and also to the voters of that part of range 69 proposed to be detached from Stutsman county, at a special election called for that purpose, by giving at least fifteen days' notice of the same by posting such notice in each election precinct as already established, or, if in such portion of either county proposed to be segregated no election precinct is already established, then it shall be the duty of the board of county commissioners, at their first meeting after the passage of this act, to appoint therein an election precinct ; and it is hereby made the duty of the county commissioners of the counties of Kidder and Stutsman to call said election within sixty days after the passage and approval of this act, and, in case of the neglect or a refusal of said commissioners to call said election, then it shall be the duty of the county clerks of said counties to call said election. § 3. In case a majority of the legal voters of said Kidder county, and of said range 69, voting, shall vote in favor of said segregation, then this act shall be in full force and effect. It shall be the duty of the respective boards of county commissioners of Kidder and Stutsman counties to meet at their respective county seats within ten days after said election to canvass said vote, and, in case of refusal of said board to canvass said vote within ten days, then the respective county clerks are hereby authorized and empowered to appoint three free-holders of the county to act as a board of canvassers, who shall canvass the vote as now provided by law. The form of the ballot shall be : 'For division, Yes. For division, No.' All expenses of said election shall be paid by the county of Stanton.

It is the peculiar language of the sections above quoted that gives rise to the controversy in question. At the election held under this act there were cast in the county of Kidder 417 votes, of which 244 were for division, and 173 against ; while in that portion of Stutsman county sought to be segregated the whole number of votes cast was 11, of which 5 were for division, and 6 against. And it is contended by the appellants that under the act, as they construed it, a majority of all the votes cast in both counties were in favor of division, and the county of Stanton was, therefore, legally created ; while the respondent claims that under

the construction of the act, as contended for by him, it was required that a majority of each district named in the act must have voted affirmatively before the new county could become created; that is to say, that a majority of that part of Stutsman county sought to be segregated must have voted affirmatively, as well as a majority of Kidder county, before the act could take effect—in other words, that the act required a majority of each district affected thereby, and not a majority of both. This is the point of contention, and the question for the consideration of the court. Did the act contemplate that the majority for division and the creation of the new county should be a majority of all the votes in both Kidder county and that part of Stutsman county to be included within the new county, or a majority of the votes in each, separately comprised? The language of the act is peculiar. It provides that the new county shall not be created "unless the question of segregation shall be first submitted to a vote of the people of Kidder county, and also to the voters of that part of range 69 proposed to be detached from Stutsman county." It does not provide that the question shall be submitted to the voters of Kidder county, and range 69, Stutsman county; but it provides that it shall be submitted to the voters of Kidder county, and also to the voters of range 69. "Also," according to Webster, means: "In like manner; further; in addition to," etc. So that, taken in the common acceptation of the word, the act required that the question should be submitted to the voters of Kidder county, and in like manner to the voters of range 69; or that the question should be submitted to the voters of Kidder county, and further, or in addition thereto, it should be submitted to the voters of range 69. This language clearly indicates two separate submissions and two separate majorities. And on an inspection of the whole act it must be held to contemplate separate and distinct submissions of the question. No one board or person submits the question, but it is submitted by separate boards or persons, to-wit: to the voters in Stutsman county it is submitted by the officers of that county, and to the voters of Kidder county by the proper officers of that county.

Nothing in the act requires the election to be held at the same hour of the day, or upon the same day, but, so far as any restric-

tions are found in the act itself, the question may have been submitted by the authorities of either county at entirely separate and distinct times.                                    •

The language of the third section is similar in its construction. It provides that "in case a majority of the legal voters of said Kidder county, and of said range 69, voting, shall vote in favor of said segregation, then this act shall be in full force and effect." The act can only be in force and effect upon the express condition that " a majority of the legal voters of Kidder county and of said range 69 shall vote in favor of said segregation." If the language of the act had been " a majority of the legal voters of Kidder county and said range 69," there would have been force in the contention of appellants that a majority of the voters in both districts, and not a majority in each, was intended; but the framers of the act have seen fit to insert the word " of " after the copulative " and," thereby making the concluding ·portion of the sentence elliptical and requiring some words. to be supplied to make the sentence complete.    What words are to be supplied ?    What words are connected by the preposition " of ? "    Or what words does it show relation between ?    The copulative " and " generally connects clauses of similar meaning and form of construction, dependent upon the principal sentence or clause ; or, as laid down in the books, " where two terms connected refer jointly to a third, they must be adapted to it and to each other both in sense and form." Brown, Inst. 201.    These clauses, " of said Kidder county," and " of said range 69," seem to conform to this rule.    They are adapted to each other in form and sense, and are equally adapted to the principal clause, " majority of ·the legal voters ; " and by this rule of construction the meaning would be that the act would be of force and effect only in case a majority in Kidder county and a majority in range 69 each voted in favor of the segregation, and the sentence would read : " In case a majority of the legal voters of said Kidder county and a majority of the legal voters of said range 69 shall vote," etc.    In what other way can the ellipsis be supplied ?    By all rules of construction, it must be supplied by words which have already been expressed, and generally by those immediately preceding.    In this case these are the only preceding words.    They not only commence the sentence, but they are the

beginning of the section itself. It will not do to insert a part of the clause preceding — as, for instance, the words "legal voters," —for that would make the clause to read, " a majority of the legal voters of said Kidder county and the legal voters of said range 69," which would require all the legal voters of range 69 to vote affirmatively, and would place the appellants in a worse position than they now occupy. Nor would they be in any better position to supply before the words "legal voters" the word " of," for the clause would still be elliptical, and we would be left to inquire what word or words were still to be supplied before it. The conclusion is irresistible that the entire clause, " majority of the legal voters," must be supplied after and before the word " of," making the sentence read as already given.

This construction is not only the sole one that can be given to the sentence, under the rules as laid down by the books, but it is one in entire harmony with the whole act, which must be taken together in the construction of particular sections. Not only is there no provision of the act providing that the election shall be held in the two counties at the same time, but the election in each county is separate and distinct, and the question submitted to the voters of the two counties affects them quite differently. It will be observed that the question of the formation of a new county is not submitted to the people who are to form the new county only. The two counties are differently affected by the segregation of territory. Kidder county by this act would lose nearly one-third of its entire area, while Stutsman county would lose but a few townships; and the legislature must have had this fact in mind when it provided that while the whole of Kidder county was permitted to vote on this question, yet in Stutsman county only that portion sought to be segregated was permitted to vote thereon. While, therefore, the voters in Stutsman only voted upon the question of segregation and the formation of a new county, the voters of that portion of Kidder county not to be included in the new county voted upon the question of a division of their county, with all its attendant results. To such voters the contemplated segregation meant a diminished territory and a diminished revenue. In voting upon this question they might well consider the injuries and benefits to be derived from such a

result in a manner quite different from those who were abandoning their former relations and entering into a new alliance. And not only did the questions submitted differ in character, and the persons to whom they were submitted differ in interest, but the persons and officers who determined the result of such submission were as different as the persons and officers who by law were required to submit them.

By the act the board of county commissioners of the respective counties was made the final judge of the result in each county, so that under this statute there were two questions submitted to two different classes of voters by two different classes of officers, and two different results were arrived at. Neither the board of commissioners of Kidder, nor the board of Stutsman, had power to declare more than the result of the vote in its own county; and, as no provision was made for a determination of the final result of the vote in both counties, it may well be argued that no such final result was contemplated by the act. Nor do we see any thing in this construction unjust, or out of the usual course of former legislation in the territory. An examination of former acts attaching and segregating parts of counties shows a uniform precedent, by allowing the people so attached or segregated to be heard in determining their future relations; and, if the legislature in this case intended to adhere to precedent, it may well be doubted whether it could have intended to have allowed the small vote of the territory segregated from the county of Stutsman to become absorbed and overcome by the vote of the entire county of Kidder.

There is another consideration which must not be lost sight of in this case, and that is the view which has been taken of this law by the political department of the government. The record of this case shows that the action of the counties of Kidder and Stutsman, in ignoring the existence of the new county of Stanton, has been acquiesced in by all the people affected thereby, down to the time of the commencement of this action; and, while such determination is not binding upon the courts, yet they are slow to disturb such interpretation deliberately made by a co-ordinate department of the government, and will do so only in case of a clear departure from a plain construction of the act itself.

In any view of the case, we are constrained to hold that the act must be construed to require a majority of the legal voters in range 69; and also a majority of the legal voters in Kidder county, in favor of the new county, before it could have any legal existence; and that, such majority not being returned from said range 69, the act became of no force and effect; and that the real property in question remained and was subject to taxation in Kidder county. The judgment of the lower court dismissing the complaint is, therefore, affirmed; all the justices concurring, except Rose, J., not sitting.