# BOARD OF COMMISSIONERS OF THE COUNTY OF FREMONT v. PERKINS ET AL.

CONSTITUTIONAL LAW—NEW COUNTIES—BIG HORN COUNTY.

1. The creation, making or formation of a county, both before and since the adoption of the constitution, was and is a legislative function.

2. The organization of a county is a matter of administration, and can be effected only by administrative or executive officers.

3. The constitutional provision (Art. 12, Sec. 2) that "the legislature shall provide by general law for organizing new counties" is not retroactive, and does not affect legislatures preceding the constitution, but is a duty imposed upon succeeding legislatures.

4. Chapter 48, Laws 1890, created, made and formed Big Horn County, and the "formation" of said county, occurring by legislative act prior to the constitution, is not controlled by the constitutional provisions relating to the formation of new counties.

5. The constitutional provisions as to property valuation applies to the "formation" of new counties, as distinguished from their "organization."

6. The constitutional provision prohibiting the "organization" of a new county until it shall contain a population of at least 1,500 bona fide inhabitants, applies to Big Horn County, as, although created and formed, it had not been organized.

7. Chapter 48, Laws 1890, is not repugnant to the constitution, but is supplemented by the constitutional provision requiring a new county to have a population of 1,500 in order to organize.

8. The county of Big Horn became an unorganized county of the State by virtue of Section 1 of Article 12 of the constitution.

[Decided January 5, 1895.]

Reserved questions from the District Court for Fremont County. HON. JESSE KNIGHT, Judge.

This action was brought in the District Court of Fremont County to enjoin the defendants from proceeding to organize Big Horn County. The defendants were residents within the boundaries of that part of the State described by Chapter 48, Laws 1890, as the County of Big Horn, and, together with others, constituting 300 electors and property tax payers residing within said limits, had prepared and signed a petition addressed to the governor for the purpose of having commissioners appointed to organize said county. The right of organization was contested upon the ground that the county did not possess the property and population qualifications prescribed in the constitution for new counties. It was alleged and admitted that no proof of those facts were intended to be made. Upon submission of the cause certain questions, stated in the opinion, were reserved for the decision of the Supreme Court.

*Potter & Burke,* for plaintiff, argued and contended that the act creating the county did not become a law of the State, because it provided that the county could not be organized until after February 1, 1892, and, therefore, the county could not have been one of the counties of the State when the constitution was adopted. The act is repugnant to the constitution. The act was not a general law. The inhabitants of the proposed new county were entitled to vote upon the proposition to make the division from the old counties. (Const., Art. 12, sec. 2.) The new county cannot be organized until each county for which the new one is to be cut off shall have left within its boundaries property of the assessed valuation required by the constitution in case of the formation of new counties.

*J. A. Van Orsdel* and *R. E. Esteb,* for defendants.

The new county has a legal existence. The act was a general law. Repeals by implication not favored. (Cass v. Dillon, 2 O. St., 607; Canal Co. v. R. R. Co., 4 Gill. & J., 6; Sedgwick Const. L., 123; Dwarris on Stat., 552; Dodge v. Gridley, 10 O. St., 178.) The provisions of the constitution were pros-

pective only.   (Wheeler v. Lynn, 8 O. St., 394; Cass v. Dillon, 2 O. St., 607; Allbuyer v. State, 10 O. St., 588; State v. Barbee, 3 Ind., 258; State v. Macon Co. Ct., 41 Mo., 453; State v. Thompson, 2 Kan., 432; Lehigh Iron Co. v. Lower Macungie Twp., 85 Pa. St., 357; Indiana Co. v. Agr. Society, 85 Pa. St., 357; Dean v. Co. Com., 6 Colo., 202; Slack v. Maysville & Lexington R. R. Co., 13 B. Mon. (Ky.), 19; Newell v. People, 3 Seld. (N. Y.), 97; Gibbons v. Ogden, 9 Wheat., 188; People v. Purdy, 2 Hill, 31; Purdy v. People, 4 Hill, 384.

One statute is never repealed by the spirit of another. (Cass v. Dillon, 2 O. St., 612; Powers v. Reed, 19 O. St., 195.)

Such a construction ought to be given to a law, if it will reasonably admit of it, as will not suffer it to be defeated on grounds of unconstitutionality.   People v. Ins. Co., 15 Johns., 358; Ex parte McCollum, 1 Cow., 550; Reyburn v. Bassett, 2 Kan., 227.

Conaway, Justice.

Section one of Chapter 48 of the session laws of Wyoming Territory of 1890 provides:   "That all that portion of the Territory of Wyoming described and bounded as in this section hereafter set forth, is hereby created and made a county of the Territory of Wyoming, by the name of Big Horn;" and then defines the boundaries.

Section two makes general provision for the organization of the county created by section one and for the organization of counties generally, "for all the purposes of county government," by petitioning the governor to appoint three electors residing within the county to act as commissioners organizing the same, and requiring specially, in the case of Big Horn county, proof to be presented to the governor showing that the counties of Fremont and Johnson, respectively, would have left within the boundaries of each an assessed valuation of sixteen hundred thousand dollars, and that the taxable property of Big Horn county would not be less than fifteen hundred thousand dollars.   It also provides that these commissioners should not be appointed before Feb. 1st, 1892.

Section three directs the commissioners, "as soon as practicable and within twenty days after receiving notice of their appointment, to meet at some suitable place within said Big Horn county or any other county hereafter to be organized;" and directs what method they shall pursue in organizing the county.

The remainder of the act consists of three sections, in these words:

"Sec. 4. Until such time as said county of Big Horn shall have selected officers, as provided by law, and the same shall have duly qualified as such, all such portions of said Big Horn county as at the time of the passage of this act belong to or are a part of some other county, for judicial revenue and election purposes, and representation in the legislature of the State of Wyoming, should it be admitted into the Union as a State, shall be attached to the counties, respectively, from which such portions of said Big Horn county are taken, except as hereafter provided by law.

"Sec. 5. For all purposes for which a county exists in this territory, except as hereinbefore provided, said county of Big Horn shall be deemed and held to be one of the counties of the Territory of Wyoming from and after the passage of this act.

"Sec. 6. After the said County of Big Horn shall have duly chosen its officers as provided by law, and the same shall have duly qualified, the said county shall thereafter constitute a portion of the third judicial district of Wyoming, and a term of court shall be held therein annually, commencing on the first Monday in August of each year."

The appointment of commissioners to effect the organization of Big Horn county under this act has not been made. It is to enjoin defendants and all other electors and taxpayers residing within the limits of the county of Big Horn acting with them from petitioning for such appointment that this action is brought.

Plaintiff claims that the provisions of the act as to the organization of Big Horn county are repugnant to the constitution of the State of Wyoming.

The constitution took effect by the act of Congress admitting Wyoming as a State in the Union on July 10, 1890. Section 3 of article 21 of the constitution is in these words:

"All laws now in force in the Territory of Wyoming, which are not repugnant to this constitution, shall remain in force until they expire by their own limitation, or be altered or repealed by the legislature."

The first session of the legislature of the State of Wyoming also adopted the Revised Statutes of 1887 and the Session Laws of 1888 and 1890, "in so far as they do not conflict with and are not repugnant to the provisions of the constitution of the State of Wyoming." Chap. 35, Laws of 1890-91, page 53.

Other constitutional provisions bearing upon the decision of this cause occur in article twelve of the constitution, as follows:

"Section 1. The several counties in the Territory of Wyoming as they shall exist at the time of the admission of said Territory as a State, are hereby declared to be the counties of the State of Wyoming.

"Sec. 2. The legislature shall provide by general law for organizing new counties, locating the county seats thereof temporarily and changing county lines. But no new county shall be formed unless it shall contain within the limits thereof property of the valuation of two million dollars, as shown by the last preceding tax returns, and not then unless the remaining portion of the old county or counties shall each contain property of at least three millions of dollars of assessable valuation, and no new county shall be organized, nor shall any organized county be so reduced as to contain a population of less than one thousand five hundred bona fide inhabitants, and in case any portion of an organized county or counties is stricken off to form a new county, the new county shall assume and be holden for an equitable portion of the indebtedness of the county or counties so reduced. No county shall be divided unless a majority of the qualified electors of the territory proposed to be cut off voting on the proposition shall vote in favor of the division."

The county of Big Horn as "created and made" by section one of chapter 48 of the laws of 1890 "has not the population or assessed valuation which is required by the constitution in order to be cut off from Fremont, Johnson and Sheridan counties and organized if the constitutional provisions for the organization of new counties are to be applied in the organization of Big Horn county." This is admitted by defendants. It is also alleged in the petition of plaintiff, and not denied in the answer of defendants, that there is not the constitutional population nor assessable property valuation left in either Fremont, Johnson or Sheridan counties.

Plaintiff claims that under this state of facts the organization of Big Horn county is prohibited by the constitution, and brings this action to enjoin such organization.

Defendants claim that Big Horn county was a county of the Territory of Wyoming, existing as such at the time the constitution took effect, and became a county of the State by virtue of section one of article 12 of the constitution, and that it may yet be organized as such county, in accordance with the provisions of the act creating it as to property valuation requiring proof that it contains fifteen hundred thousand dollars and that there will be left to Fremont and Johnson sixteen hundred thousand dollars each, notwithstanding the provisions of the constitution requiring greater property valuation, and without regard to the constitutional requirement as to population in Big Horn county and in the several counties from which its territory was severed.

The question is, can Big Horn county now be legally organized? If it can, the injunction should be denied; if not, the injunction should be granted.

Several considerations seem to require that this question should be answered in the negative.

By chapter 48 of the session laws of 1890 Big Horn county was "created and made." The act then provides in what manner it, or any county thereafter to be organized, may be "organized," commencing with the appointment by the governor, on petition of three hundred electors of the county, of three electors residing within the county "to act as com-

missioners in organizing the same." It thus appears that while Big Horn county was "created and made" by the act of 1890, further and future action, by at least three hundred electors within the limits of the county, by the governor, and by the commissioners appointed by the governor, was required to organize the county. The legislature has thus made a distinction between creating and making a county and organizing one. The legislature creates and makes the county of Big Horn by its own enactment. But the legislature merely provides for putting machinery in motion for organizing Big Horn or any other county, by petition of three hundred electors of such county. The question to be decided is further complicated by the introduction, in section 2 of article 12 of the constitution, of another word to indicate some portion of the process of creating and putting in operation a county government. It is the word "formed." Certain conditions are specified under which a new county may be "formed." Other and different conditions are specified under which a new county may be "organized." The constitution thus makes a distinction between forming a county and organizing one. It is similar to the distinction made by the act of 1890 between creating and making a county and organizing one. It seems clear that both before and since the adoption of the constitution the creation or making or formation of a county was and is a legislative function; but the organization of a county is not and never was. The legislature can and must, when a new county is to be made and organized, give it a name and define its boundaries. But the organization of such county is a matter of administration and can be effected only by administrative or executive officers. This makes the creation of the county effective for the only purpose of its creation, by organizing within the geographical limits fixed by the legislature, the quasi corporation known as a county, and putting in operation the county government.

It is urged on behalf of defendants that the provisions of article 12 of the constitution are prospective in their operation and not retroactive. "The legislation it speaks of

is future legislation and not past;" says the brief of defendant. This position is well sustained by authority and is evidently correct. "The legislature shall provide by law for organizing new counties," says the constitution. This is clearly a duty imposed on legislatures succeeding the constitution, and it does not affect legislatures preceding it. "But no new county shall be formed unless it shall contain within the limits thereof property of the valuation of two million dollars, as shown by the last preceding tax returns, and not then unless the remaining portion of the old county or counties shall each contain property of at least three million dollars of assessable valuation," says the constitution. Counties which "shall be formed" are not those already formed. And this provision is in its terms a provision for the future formation of counties, and evidently does not affect those already formed.

Authorities cited on behalf of defendants amply sustain this view. See Cass v. Dillon, 2 O. St., 207; State v. Trustees, &c., 8 O. St., 397; Allbuyer v. State, 10 O. St., 588; State v. Barbeer, 3 Ind., 258; State v. Macon County Court, 41 Mo., 453; State v. Thompson, 2 Kan., 432; Lehigh Iron Co. v. Lower McCungie Twp., 81 P. St., 484; Indiana Co. v. Agricultural Society, 85 Pa. St., 357; Dean v. Co. Com., 6 Colo., 202; People v. Supervisors of Utica, Co., 3 Barb., 332.

And the constitution proceeds to say further: "And no new county shall be organized, nor shall any organized county be so reduced, as to contain a population of less than one thousand five hundred bona fide inhabitants." This provision is also prospective. It does not affect counties already organized. It affects only the future organization of counties. And the proposed organization of Big Horn county is a future organization of that county. It is not a thing accomplished in the past, but it is something to be done in the future. Neither is it a legislative function. It is a thing which the legislature cannot do and has not attempted to do.

If these views are correct it would seem that there is

nothing unconstitutional in chapter 48 of the session laws of 1890. That act created, made or formed Big Horn county. It also provided for its organization, with certain conditions as to assessable property. The act imposed no conditions as to population. Of course that act was subject to be amended or supplemented either by legislative enactment or constitutional provision. It has not been amended or supplemented by legislative enactment, but it seems clear that it has been supplemented by constitutional provision. And the language of that provision is exclusive and self-executing. It includes in its scope not only legislative action, but action by any department of the government, by any officer or officers, and by any citizen or citizens. "No new county shall be organized, nor shall any organized county be so reduced, as to contain a population of less than one thousand five hundred bona fide inhabitants." No language could be broader in its terms or more sweeping in its scope than this. It seems clear that, since the adoption of the constitution neither Big Horn county nor any other new county could be organized with a population of less than one thousand five hundred bona fide inhabitants. Because Big Horn county has not the population required it cannot now be organized.

This disposes of the case. But the district court has certified ten questions as being included in the determination of the cause. These questions will now be stated with such answers or remarks as seem appropriate.

"First. Can the electors, living within the geographical limits of Big Horn county, organize said county, for all the purposes of a county government, by proceeding under section 2 (two) of chapter forty-eight (48) of the Session Laws of Wyoming of 1890, the same being the act creating the county of Big Horn in the then Territory of Wyoming?"

Ans. They can, when Big Horn county has the population required by section 2, article 12, of the constitution.

"Second. Is Big Horn county, as described in said enabling act, creating it, one of the counties of the State of Wyoming, and did it exist as a county at the time of the admission of the Territory of Wyoming as a State, as provided

by section one (1), Art. XII, of the constitution of the State of Wyoming?"

Ans. It existed as an unorganized county.

"Third. Is the provision for the organization of Big Horn county in the act creating it, it being a special act as regards Big Horn county, repugnant to that part of Sec. 2 of Art. XII of the constitution of the State of Wyoming, which states: 'That the legislature shall provide, by general law for organizing new counties'?"

Ans. It is not. This constitutional provision operates prospectively only, and is not self-executing.

"Fourth. Big Horn county having been created by chapter 48, Session Laws of 1890, and provision having been made for its organization, when it was shown that Johnson and Fremont counties, respectively, shall have left within their boundaries, respectively, after the complete organization of said Big Horn county, an assessed valuation of property of sixteen hundred thousand dollars, as shown by their assessment rolls after the said assessment rolls have been duly examined and equalized, and that Big Horn county has taxable property within its boundaries as shown by the last assessment of property in said district embraced within said Big Horn county, amounting to the sum of not less than one million five hundred thousand dollars, after having been duly examined, and equalized, as required by law, is it necessary under section 2 of article 12 of the constitution of Wyoming that said Big Horn county shall have property within the limits thereof of the valuation of two millions of dollars, as shown by its last preceding tax returns? And is it also necessary that the counties of Fremont, Johnson and Sheridan shall each contain property of at least three millions of dollars of assessable valuation before said Big Horn county can organize for the purposes of county government?"

Ans. It is not necessary that Big Horn county shall have property of the valuation of two millions of dollars, nor that Fremont, Johnson and Sheridan counties should each have property of the valuation of three millions of dollars before

Big Horn county can organize. The constitutional provision as to property valuation applies to the formation of new counties as distinguished from their organization.

"Fifth.. There having been no requirement as to the population of said Big Horn county before it could be organized under the act creating it, is it necessary under section 2 of article 12 of the constitution, that said Big Horn county should contain a population of not less than one thousand five hundred bona fide inhabitants, before it can be organized for the purposes of a county government? And is it necessary that Fremont, Johnson and Sheridan counties shall each, respectively, have after the organization of said Big Horn county, a population of not less than one thousand five hundred bona fide inhabitants?"

Ans. It is necessary that Big Horn county should have 1,500 population, but it is not necessary that Fremont, Johnson and Sheridan counties should each have that population. They were "reduced" by the act of 1890 before the constitution was in force.

"Sixth. Big Horn county having been created by chapter 48, Session Laws of 1890, did said act of the legislature designate the geographical boundaries of said Big Horn county, separate it from the counties of Fremont, Johnson and Sheridan, and divide said counties of Fremont, Johnson and Sheridan, cutting off from them the county of Big Horn, in such manner that it is not now necessary for a majority of the qualified electors of said Big Horn county to vote in favor of the division of said counties of Fremont, Johnson and Sheridan, and cutting off the said Big Horn county before the said Big Horn county can be organized for the purposes of a county government?"

Ans. Fremont, Johnson and Sheridan counties were divided by the act of 1890. No vote is necessary.

"Seventh. Did chapter 48 of the Session Laws of 1890 become a part of the law of the State of Wyoming when the State was admitted?"

Ans. The chapter became a part of the laws of Wyoming, and it is not repugnant to the constitution. But it is sup-

plemented by the constitutional provision requiring a new county to have a bona fide population of one thousand five hundred in order to organize.

"Eighth. Chapter 48, Session Laws of 1890, being in force at the time of the adoption of the constitution of the State of Wyoming, and at the time the State of Wyoming was admitted, does said act, in so far as it relates to the creation and organization of Big Horn county, remain in force, it not having been altered, or repealed by the legislature, or is said act repugnant to the constitution and therefore void?"

Ans. See answer to seventh question.

"Ninth. The county of Big Horn having been created by section 1 of chapter 48 of Session Laws of 1890, and section 5 of said chapter 48 having declared that for all the purposes for which a county exists in this territory, except as hereinbefore provided, said county of Big Horn shall be deemed and held to be one of the counties of the Territory of Wyoming from and after the passage of this act, which act was approved March 12, 1890. Now, did said county of Big Horn exist within the meaning of section 1, article 12, of the constitution of Wyoming, in such manner that by the terms of said section 1, article 12, it is declared to be one of the counties of the State of Wyoming, or was it necessary for the qualified electors residing within said county to proceed as provided by said act, to organize said county before it could exist as a county under the provisions of the constitution?"

Ans. The county of Big Horn, by virtue of section 1, article 12, of the constitution, became a county of the State of Wyoming as it (the county) existed at the time of the admission of the Territory as a State—that is, as an unorganized county. It may yet be organized under the conditions required by existing laws upon the subject of its organization. These conditions are found in chapter 48 of the Session Laws of 1890, and in that clause of section 2 of article 12 of the constitution which treats of the population required in a new county to enable it to be organized....

"Tenth. Since the act purporting to create Big Horn county provided that each of the counties of Johnson and Fremont should have property of an assessed valuation of one million six hundred thousand dollars, but made no provision as to Sheridan county with reference to what the valuation of its assessable property valuation should be, does not the provision of the constitution apply to Sheridan county requiring that such county shall have at least property of an assessed valuation of at least three millions of dollars before said county of Big Horn can be organized?"

Ans. There is no such constitutional provision as that stated in this question. The constitutional requirement of a certain valuation of assessable property applies to the formation of the county by the legislature. The organization of the county so formed is a different and subsequent proceeding by other parties and other officials. It seems that a new county may be "formed" if it has the requisite wealth, and if the counties from which it is taken, when so "reduced," still contain the requisite wealth and population, but the new county cannot be "organized" until it contains the requisite population. We use the words "formed," "created," and "made," in the sense in which they seem to be used in the act of 1890 and in section 2, article 12, of the constitution. Sheridan county is a casus omissus. The courts cannot make a law for this county.

*The injunction prayed for will issue.*

GROESBECK, C. J., and CORN, J., concur.