## ARMSTRONG *et al.* v. STATE *ex rel.*

### FAIN, *Co. Atty.*

No. 2418. Opinion Filed June 27, 1911.

(116 Pac. 770.)

1. **QUO WARRANTO—Franchises—Usurpation—Parties Defendant.**
   If the action be for usurping a franchise by a corporation, it should be against the corporation, but, if for usurping the franchise to be a corporation, it should be against the particular persons guilty of the usurpation by assuming to act in a corporate capacity, and not against the corporation as such.

2. **COUNTIES—Organization of New County—Estoppel to Attack.**
   Whether the organization of a new county is repugnant to the provisions of the Constitution pertaining to that subject is a judicial question, and the state is not estopped to question such organization upon that ground by a prior recognition thereof by the legislative and executive departments.

3. **COUNTIES—Organization of New County—Popular Vote.** Under section 4, art. 17, of the Constitution, before a new county can be

created by transferring territory from an existing county or counties to the proposed county, such question shall be submitted to a vote of the qualified electors residing in the territory to be formed into such new county, and there must be 60 per centum of the vote cast in the particular territory detached from each county in favor of such transfer.

(Syllabus by the Court.)

*Error from District Court, Comanche County; J. T. Johnson, Judge.*

*Quo warranto* by the State, on the relation of J. A. Fain, county attorney, against J. E. Armstrong and others. Judgment for plaintiff, and defendants bring error. Affirmed.

*Moss, Turner & McInnis* and *Giddings & Giddings,* for plaintiffs in error.

*J. A. Fain,* Co. Atty., and *L. M. Keys,* for defendant in error.

KANE, J. This was an action in the nature of *quo warranto,* commenced by the defendant in error, plaintiff below, in the district court of Comanche county, to dissolve what was alleged to be the pretended organization of the so-called Swanson county. The plaintiffs in error were defendants below, and were and are the persons holding the various county offices provided by law for carrying on the affairs of such a municipality. In the original petition various grounds were assigned why the pretended county should be dissolved and the pretended officers ousted from office, but by stipulation all allegations as to sufficient taxable area, population, and fraud in the election, which might be controverted or attended by delay in trying the issues, were eliminated, and the cause was presented on behalf of the plaintiff upon the theory that the proposed county being a "new county" and Comanche county an existing county, under section 4, art. 17, of the Constitution, before the new county could be legally organized, it would be necessary to have the approval of 60 per centum of the vote cast in the part of the territory of Comanche county sought to be transferred to the new county as a part thereof. It was alleged in the petition, and admitted by demurrer thereto, that

60 per centum of the vote cast in the territory belonging to Comanche county was not in favor of the transfer. It was further stipulated that:

"The court shall render final judgment in this cause upon the order of said court either overruling or sustaining defendants' demurrer to plaintiff's second amended petition, and in the event the court shall overrule said demurrer, final judgment thereupon shall be rendered as prayed for in plaintiff's second amended petition, ousting said defendants from their respective offices and dissolving and disorganizing Swanson county and in the event said demurrer is sustained, final judgment shall thereupon be rendered in favor of defendants."

The demurrer was overruled by the court and judgment of ouster rendered against defendants, and the present organization of Swanson county declared to be void. To reverse this action of the court, this proceeding in error was commenced.

Counsel for the plaintiffs in error in their brief, preliminary to the main question, present two grounds upon which they claim the judgment of the court below ought to be reversed, which will be noticed here: (1) That the proper party defendant, to-wit, Swanson county, was not before the lower court, as required by the statutes of the state, and that, therefore, any judgment rendered dissolving Swanson county would be as to Swanson county a nullity; (2) that the state of Oklahoma is estopped from denying the legal existence of Swanson county for the reason that through its executive and legislative departments it has recognized the county, and construed the law in defendants' favor.

The rule which seems to be supported by the great weight of authority is that, if the action be for usurping a franchise by a corporation, it should be against the corporation, but, if for usurping the franchise to be a corporation, it should be against the particular persons guilty of the usurpation by assuming to act in a corporate capacity, and not against the corporation as such. The petition alleges, in substance, that the state of Oklahoma, plaintiff, on the relation of J. A. Fain, county attorney of Comanche county, state of Oklahoma, complaining of the above-named defendants, respectfully shows to the court that the defendants, J. T. Armstrong, C. E. Bull and J. W. Wilcox, **each**

claim to hold and occupy the office of county commissioner of the so-called county of Swanson, and as such are claiming to constitute the board of county commissioners of the so-called county, and as such are performing the duties and exercising the functions imposed by law upon the board of county commissioners, and will and are creating liabilities and allowing claims against said so-called county, and are in all things assuming to be a body politic and corporate within the state of Oklahoma. And it contains allegations to the same effect concerning the other officers, and further alleges that the so-called county of Swanson is not and never has been a legally organized and constituted municipal corporation of the state of Oklahoma; that the defendants are pretending to be officers of said so-called county under a pretended organization of same which was in violation of the Constitution and laws of the state, and therefore wholly illegal and void. In the case of *State ex rel. Pros. Atty. v. South Park,* 34 Wash. 162, 75 Pac. 636, 101 Am. St. Rep. 998, it was held that:

"An information cannot be directed against a corporation which it charges does not exist. In such case there is no entity in existence upon which service can be made or which can be pleaded to the information. It is illogical to sue an alleged artificial person for the purpose of obtaining an adjudication that there is no such person. Either there is or is not a corporation. If there is not a corporation, it cannot be sued. The suit, then, must be against the persons who assume to act in a corporate capacity. By bringing suit against the corporation appellant admits its existence. The information therefore does not state facts sufficient to constitute a cause of action, since it simply seeks an adjudication that there is not now, and never was, such a corporation."

In the case of *People ex rel. v. City of Spring Valley,* 129 Ill. 169, 21 N. E. 843, an action in the nature of *quo warranto* was brought against the incorporated city and Chas. J. Devlin as mayor, in which the legal existence of the corporation was attacked and said Devlin charged as being a usurper in office, praying for ouster and dissolution. The Supreme Court stated the rule to be that:

"When an existing corporation abuses any of its franchises,

or usurps franchises which do not belong to it, the information should be against the corporation as such. But, when a body of men or a number of individuals unlawfully assume to be a corporation, the information should be against them as individuals, and not by their assumed corporate name."

In the case of *State ex rel. v. Small,* 131 Mo. App. 470, 109 S. W. 1079, *quo warranto* was commenced on the relation of the Attorney General against one Small and others charging them with usurping and exercising the duties of trustees of the town of Anniston, based on the further charge that the village of Anniston was never incorporated legally and had no corporate existence. In affirming a judgment of ouster and dissolution, the Supreme Court said:

"But it is said the order cannot be annulled in the present proceeding because the village of Anniston has not been made a defendant, and, as the corporate life of the town is attacked, it was a necessary party. Support is lent to this position by the opinion in *State ex rel. v. Huff,* 105 Mo. App. 354, 79 S. W. 1010; but the point was not essential to the decision of said cause, and the ruling ought to be disapproved, for it is opposed not only to the current of authority, but to decisions of our Supreme Court. The doctrine is accepted that when in a *quo warranto* proceeding, or one in the nature of *quo warranto,* the existence of a municipality is denied, the proper respondents are the usurping officials who wield municipal powers, and to make the town a party is illogical, because thereby its existence would be implied, which is the very fact denied. This proposition was decided in *State ex rel. v. Coffee,* 59 Mo. 59, 67; *State ex rel. v. McReynolds,* 61 Mo. 203, 212; *State ex inf. v. Fleming,* 147 Mo. 1, 9 (44 S. W. 758); Id., 158 Mo. 558, 567 (59 S. W. 118); *State ex inf. v. McClain,* 187 Mo. 409, 412, 86 S. W. 135; *State ex rel. v. Gravel Road Co.,* 116 Mo. App. 175, 193, 92 S. W. 153; 17 Enc. Pl. & Pr. 437."

In the case of *People v. Stratton,* 33 Colo. 464, 81 Pac. 245, the Supreme Court reversed the court below saying:

"It is contended that, as the town is not a party to the proceedings, no judgment binding upon it can be rendered; that, the information being against the officers of the town, the regularity of the incorporation cannot be attacked in a suit in which the town is not a party. The great weight of authority supports the position taken by the plaintiff in error in his contention that the town is not a necessary party. It is held that the only way in

which the regularity of the incorporation can be tested is by a proceeding against the individuals who claim to hold offices in the town government, because, it is held, that, when a suit is brought against the town, the town is recognized as a municipality, and that one cannot, in a suit in which he recognizes the existence of a town, ask to have the proceedings by which the town was incorporated declared void. The rule is that, 'if the information be for usurping a franchise by a corporation, it should be against the incorporation, but, if for usurping the franchise to be a corporation, it should be against the particular persons guilty of usurpation.' The action in this case being for the usurpation of a franchise to be a corporation, the *de facto* town was not a necessary party defendant, and the court can, and should, proceed to render judgment of ouster against the individuals who are assuming to exercise corporate powers of the town of Atwood."

Other cases to the same effect are: *Chessire v. People,* 116 Ill. 493, 6 N. E. 486; *People v. Draper,* 15 N. Y. 532; *People v. Carpenter,* 24 N. Y. 86; *People v. Board of Education,* 101 Ill. 308, 40 Am. Rep. 196; *People v. Bruennemer,* 168 Ill. 482, 48 N. E. 43; *State v. Uridil,* 37 Neb. 371, 55 N. W. 1073; *State v. Parker,* 25 Minn. 215; *State v. Job,* 205 Mo. 1, 103 S. W. 493; *State v. Cin. Gas, Light & Coke Co.,* 18 Ohio St. 262; *People v. Railroad Co.,* 15 Wend. (N. Y.) 113, 30 Am. Dec. 33; *Town of Enterprise v. State,* 29 Fla. 128, 10 So. 740; 2 Dillon on Munic. Corp. (4th Ed.) § 894; 28 Cyc. 172. We think the foregoing authorities abundantly sustain the position taken by the state that Swanson county was not a necessary party to the action.

The second contention, that the state by its legislative and executive recognition of Swanson county is estopped to question its organization even though organized in violation of the Constitution, cannot be sustained. The acts of recognition which counsel claim operate as an estoppel were the issuance by the Governor of a proclamation declaring Swanson county organized, and the enactment of a law by the Legislature placing the county as organized within a judicial district. Under the Constitution, the power of the Legislature in relation to the creation of new counties is very limited indeed. It may provide by general law for the creation of new counties, but there is a constitutional limi-

tation upon that power which makes it subject to the will of the people whose rights may be affected as will more fully appear hereafter. The authority given the Governor to proclaim the organization of new counties was conferred upon him by the act of the Legislature under constitutional restrictions. Both departments must keep within the bounds prescribed by the Constitution. The executive and legislative departments must have acted in the particulars above set out upon the theory advanced by counsel for plaintiffs in error that, under section 4 of article 17 of the Constitution, 60 per centum of the entire vote cast at the election held for the purpose of determining whether said county should be organized was sufficient to warrant its organization, and that the consent of 60 per centum of the votes cast in that part of Comanche county which it was proposed to make a part of the new county was not necessary. This is clearly a judicial question, and, if the Governor and the Legislature erred in construing the Constitution, it is the duty of the court to set the matter right. Departmental and legislative constructions are often given weight by the courts in construing ambiguous laws, but this is only one of the canons of construction, and, like all other rules of that class, serve only as beacon lights to guide the courts when the way is not clear. The ultimate duty of determining the constitutionality of the law is still with the courts. The courts are necessarily the tribunals of last resort to determine whether the other co-ordinate branches of the government have gone beyond the powers given them. and keep them within the boundary prescribed by the Constitution.

Section 4, art. 17, of the Constitution, pertaining to the subject of creating and altering counties, provides:

"The Legislature shall provide by general laws for the creation of new counties or altering or changing lines, and the equitable division of assets and of liabilities, and the original location of county seats in such new counties: Provided, that every such question shall be submitted to the vote of the qualified electors residing in the territory to be formed into such new county or transferred to another county; and shall be approved by 60 per centum of the votes cast in said election: Provided, that no new county shall be formed of less than four hundred square miles

taxable area, nor with a population less than fifteen thousand people, nor with taxable wealth less than two and one-half million dollars, as shown by the current tax rolls. Nor shall any territory be taken from an existing county for any purpose bringing the newly created line of such existing county nearer than ten miles to the county seat thereof. Nor shall the taxable area, population, or taxable wealth of said existing county be reduced below that required for a new county. Nor shall any territory, in any case, be transferred from one county to an existing county, if by such transfer of territory, the county from which the territory be taken will then be smaller in area than the county to which the addition is made: Provided, that when the territory is to be transferred from an existing county to either a new or an existing county, there must be sixty per centum of the vote cast in such particular territory in favor of the transfer, and, in case the transfer be to an existing county, the acceptance of such territory must first be approved, by a majority vote of the electors of said county, at an election to be called and held therefor, as may be provided by law. The limitation as to area, valuation, and population shall not be increased by the Legislature."

Swanson county was carved out of Comanche and Kiowa counties, two counties created by the Constitution, upon the admission of Oklahoma as a state. The petition alleges that at the election held for the purpose of determining whether a new county should be created said proposition failed to receive 60 per centum of the votes cast in that part of Comanche county embraced in the proposed new county. As this allegation was admitted to be true by the demurrer, the question is, Does the section of the Constitution above set out require the approval of 60 per centum of the votes cast in the detached part of Comanche county, or is 60 per centum of the total vote cast at the election sufficient? We think the facts in this case place it within the purview of the third provision of section 4, *supra*. This was clearly an attempt to transfer territory from an existing county to a new county, and, before that can legally be done, "there must be 60 per centum of the vote cast in such particular territory in favor of the transfer." Under section 8 of article 17 of the Constitution, Comanche and Kiowa counties were created and their boundaries defined, and the people residing therein have the right to retain their existence within the boundary lines fixed

by the Constitution until their status has been changed by a vote of 60 per centum of the people qualified to vote, resident of any part of the county sought to be detached. The rights of these quasi municipal corporations are guaranteed to them by the Constitution, and they are as sacred as any other right secured by that instrument to other corporations or private persons. If the contention of counsel for plaintiffs in error was sustained, it would be possible to dismember existing counties and attach them to new or other existing counties with every qualified voter within the detached territory voting against it. We do not believe that the framers of the Constitution intended to make such a condition possible. As was said in the case of *Zimmerman v. Brooks,* 118 Ky. 85, 80 S. W. 443:

"The Constitution recognizes the existing counties of the state. It confers upon them the right to remain in area not less than 400 square miles. They are quasi corporations. They may sue and be sued. They have certain public burdens to bear. When part of their territory is cut off, these burdens fall more heavily upon the remaining territory. The rights of these corporations which are guaranteed them by the Constitution are as sacred as any other rights secured by that instrument to other corporations or private persons. The Legislature, in the creation of new counties, is simply an agency, with well-defined restrictions upon its powers. If it acts in a case where it has power to act, its act, like that of any other agent beyond the scope of his power, is void. The county whose rights are affected may complain, and so may any taxpayer who is prejudiced, for the taxpayers have a right to insist upon the constitutional protection against the increased burdens which the formation of the new county will entail. It is the province of the courts to protect private rights under the Constitution. Constitutional guaranties would amount to nothing if there was no way to protect them."

In the case of *Van Dusen et al. v. Fridley,* 6 Dak. 322, 43 N. W. 703, the Legislature provided for the creation of a new county out of portions of the counties of Kidder and Stutsman, to be determined by a majority vote of the people residing within the proposed new county. It was held that it was necessary for a majority of the votes cast in that portion taken from each county to be in favor of the proposition. Of the total votes cast in

Kidder county, 244 votes were for the proposition and 173 against; while in Stutsman county the total votes cast were 11, of which 5 were for the proposition and 6 against. Mr. Chief Justice Tripp, who delivered the opinion for the court, says:

"While, therefore, the voters in Stutsman only voted upon the question of segregation and the formation of a new county, the voters of that portion of Kidder county not to be included in the new county voted upon the question of a division of their county, with all its attendant results. To such voters the contemplated segregation meant a diminished territory and a diminished revenue. In voting upon this question they might well consider the injuries and benefits to be derived from such result in a manner quite different from those who were abandoning their former relations and entering into a new alliance. * * * In any view of the case, we are constrained to hold that the act must be construed to require a majority of the legal voters in range 69 (in Stutsman county); and also a majority of the legal voters in Kidder county, in favor of the new county, before it could have any legal existence; and that, such majority not being returned from said range 69, the act became of no force and effect."

Other cases involving questions similar to the one herein under consideration are *State ex rel. v. Stark County*, 14 N. D. 368, 103, N. W. 913; *McDonald v. Doust*, 11 Idaho, 14, 81 Pac. 60, 69 L. R. A. 220; *Board of Commissioners v. Perkins*, 5 Wyo. 166, 38 Pac. 915. All of these seem to sustain the judgment of the court below.

As they are in harmony with our views as to a proper construction of the constitutional provision under consideration, the judgment of the court below must be affirmed.

All the Justices concur.