THE STATE ex inf. FRANK L. PULLEY, Prosecuting Attorney of Clinton County, ex rel. WILLIAM R. HARRISON et al., Appellants, v. JOHN B. SCOTT et al.

Division One, March 16, 1925.

1. **SCHOOLS: Consolidated District: Including City.** A consolidated school district cannot be formed so as to include a city or town school district which contains at the time two hundred or more children of school age. But it does not follow that the boundaries of an existing city or town school district cannot be extended, in pursuance of other statutes, so as to include an adjoining common school district.

2. ———: ———: **Change in Name.** The proper statutory designation of the existing city district being "The School District of Lathrop," designating the district, in the petition, notices and proposition to extend its boundary lines so as to include two common school districts, as "Lathrop School District," is no evidence of a purpose to organize a consolidated school district—a new district—under a new name.

3. ———: ———: **Extension of City District: Distinction.** The formation of a consolidated school district is, under the statutes, the creation of a new district; the extension of the boundary lines of a city or town district to include additional adjoining territory is not the creation of a new district, but the enlargement of the territorial area of an existing district.

4. ———: **Extension of City District: To Include Entire Common School Districts: Statutes.** It is doubtful if the provisions of Section 11201, Revised Statutes 1919, that "when it is deemed necessary (1) to form a new district, to be composed of two or more entire districts, or parts of two or more districts, . . . or (4) to change the boundary lines of two or more districts," a notice, upon

a petition "signed by ten qualified voters residing in the district affected thereby," shall be given, and the provision of Section 11253 that "all the provisions of Section 11201, relating to the change of boundary lines of common school districts, . . . shall apply to town, city and consolidated districts," authorize the extension of an existing city district to include two entire common school districts, for "a change of boundary lines of common school districts" implies the continued existence of "two or more districts;" and where the petition was signed by six voters of the city district, and by four of one common school district and by one of the other, the attempted annexation of the two entire common school districts to the city district was not legal. And this view is emphasized by Section 11252 which expressly provides for the annexation of an entire district adjoining a city, upon the initiative of the district desiring to be attached, whose board is to call a special election upon the petition of ten qualified voters therein, and if a majority of its voters favor annexation the district may be annexed to the city district upon the affirmative vote of a majority of its board alone.

5. ———: **Illegal Annexation of Entire Districts to City: Quo Warranto.** Notwithstanding the attempted extension of the boundary lines of a city district to include two entire common school districts was illegal, the directors of the city district residing therein cannot be ousted by *quo warranto* brought against the directors alone. The attempted extension did not disorganize the existing city school district, nor abolish the offices of directors therein, and *quo warranto* against the directors is available only when there is no legally organized district and consequently no office of director. To a proceeding to oust the district from an attempted exercise of jurisdiction over territory to which its right is challenged, the district is a necessary party.

6. ———: ———: ———: **Laches: Estoppel.** The city school district, admittedly legally organized, not having been made a party and being a necessary party to *quo warranto* to oust it from an attempted exercise of jurisdiction over territory alleged to have been illegally annexed to it, the question of relators' laches in bringing the suit and of estoppel, because of long acquiescence in and continued recognition of the validity of the extension, by relators and the State and other school authorities, is not determined.

7. ———: ———: ———: **Directors Residing Outside City District.** It is not proper to determine in a *quo warranto* brought against school directors alone that the legally organized city school district is exercising jurisdiction over the territory of other school dis-

tricts attempted to be annexed to it by the extension of its boundary lines, since such district is a necessary party; and therefore it is not proper to determine that two of said directors who reside outside the city district and within the limits of such other districts should be ousted from their offices as directors.

Citations to Headnotes: 1 to 5, Schools and School Districts, 35 Cyc. 845, 838, 850, 857, 848; 6 and 7, Quo Warranto, 32 Cyc. 1446, 1465.

Appeal from Clinton Circuit Court.—*Hon. A. M. Tibbels, Judge.*

AFFIRMED (*in part*) and REVERSED (*in part*).

*John A. Cross, Pross T. Cross* and *R. H. Musser* for appellants.

(1)   It being conceded that at the time of the attempted extension or consolidation of the three districts into one, one of the three, the Lathrop District, was a city school district with an enumeration of more than two hundred children of school age, the necessary jurisdictional facts were absent, and the acts forming the new district were null and void, and said district is not legally formed or existing, and the respondents have no right to act as directors thereof. Secs. 11255, 11258, 11253, 11201, 11202, R. S. 1919; State ex rel. v. Clardy, 267 Mo. 371; State ex rel. v. Fry, 300 Mo. 541; State ex rel. v. Sweaney, 270 Mo. 685; State ex rel. v. Mc-Farlin, 154 Mo. App. 411. (2)   The law required, in any event, that the clerk of the Lathrop School District should give and post a legal notice of the petition, the holding of the election, etc., and the record discloses that no such notice was ever made or given by said Lathrop District clerk, and therefore all proceedings thereafter, including the alleged election, were null and void. Sec. 11201, R. S. 1919; 27 Cyc. 1118. (3)   Relators, being resident assessed tax-paying citizens of the proposed district, are entitled to maintain this action under the law, and are

.neither guilty of laches nor subject to the doctrine of estoppel. Sec. 2066, R. S. 1919; 32 Cyc. 1437.; State v. Rose, 84 Mo. 198; State v. McClain, 187 Mo. 409; State v. Long, 275 Mo. 181; State v. Small, 131 Mo. App. 480; State v. Hefferman, 243 Mo. 443; Nichols v. Bank, 55 Mo. App. 91; Wood v. Kansas City, 162 Mo. 311; Locke v. Bowman, 168 Mo. App. 130; 16 Cyc. 783, 811; 2 Herman on Estoppel, sec. 922; Merrill v. Shea, 30 Fed. 743; Merrill v. Tobin, 30 Fed. 738; State ex rel. v. Higan, 163 Mo. 53; State ex rel. v. McClain, 187 Mo. 409; State ex rel. v. Clardy, 267 Mo. 371.

*W. S. Herndon* and *Daniel H. Frost* for respondents.

(1)   The proceedings in this case were not under Sec. 11252, R. S. 1919, providing for annexation to city or town schools, but under Sec. 10837, R. S. 1909 (Sec. 11201, R. S. 1919), providing for the change of boundary lines of school districts. Said Section 10837, by virtue of Sec. 10881, R. S. 1909, so far as it relates to change of boundary lines of school districts, applies to city or town school districts. This Section 10881 (Sec. 11253, R. S. 1919) is in very plain terms, and says "all provisions of Section 10881 (Sec. 11253) relating to the change of boundary lines of common school districts, . . . shall apply to town, city and consolidated districts," and has been so construed. State ex inf. v. Sweaney, 270 Mo. 691; School District v. McFarlin, 154 Mo. App. 418. (2)   All the provisions of Section 11201 apply in this case, so publication of the notice in the Lathrop newspaper for the Lathrop District was all that was required and is a compliance with the provisions of said section. This section provides for posting of notices or publication for same length of time in all newspapers of the district. (3)   Appellants throughout their brief insist that we have attempted to form a consolidated school district. It will be noticed that under Sections 11255 and 11258, there is no way to include a town with over two hundred children of school age in a consolidated dis-

trict. But that does not prevent it from annexing all territory under the provisions of Section 11252. Or of accomplishing the same thing by changing its boundaries under Sections 11201 and 11253. (4) It is true that the object of all three of these districts was to change the boundaries of the city district so as to include both the others, so that all the districts might be mutually benefited. Appellants insist that we have formed a consolidated district, and they do that, because the law does not permit a city with two hundred children of school age to be included in a consolidated district, but we have never thought of the Lathrop School District as a consolidated district. It is purely a city school district as it was before, and is known as the School District of Lathrop, and not as a consolidated school district. (5) Appellant has no leg to stand upon. So manufactures one by insisting that their action is against and attacks the legality of the Consolidated School District of Lathrop, when there is no such school district. These proceedings were brought squarely under the provisions of Section 10837 (now Section 11201). The petitions filed asking for the election state that they are proceeding under that section, which section provides for the changing of boundary lines by the annexation of territory or otherwise. (6) While we maintain that the law was fully complied with by these school districts in making the change in boundaries of Lathrop School District, yet the principle of laches and acquiescence on the part of the State and its officers for a period of six years would forbid the legality of the elections being questioned at this time. State ex rel. v. Town of Mansfield, 99 Mo. App. 152; State ex rel. v. Town of Westport, 116 Mo. 582. Where a municipality has been recognized by court and officers of State for a number of years, the State is precluded from depriving it of its franchise. State ex rel. v. Town of Westport, 116 Mo. 592; State ex rel. v. City of Carterville, 183 S. W. 1093; State ex rel. v. Miller, 113 Mo. App. 668. (7) *Quo warranto* will not lie to oust the officers of a *de facto* corporation on the

ground that the municipality is not legally incorporated, where the sole purpose is to test the validity of the incorporation. Such proceeding must be brought directly against the municipality. The action in this case was not brought against the school district at all and could not be maintained, as its sole purpose was to test validity of extension of boundary line. State ex rel. v. Hiff, 105 Mo. App. 363; State ex rel. v. Belleflower, 129 Mo. App. 146; Black v. Early, 208 Mo. 305; Franklin Avenue Church v. Board of Education, 75 Mo. 408; State ex rel. v. Men's Club, 178 Mo. App. 562. If action is not brought against corporation it is not binding on it and if the action is to test the right of a legal municipality to exercise authority over certain territory action should be brought directly against corporation. State ex inf. v. McClain, 187 Mo. 414; State ex inf. v. Fleming, 147 Mo. 1.

LINDSAY, C.—An information in the nature of a *quo warranto* was filed on June 4, 1921, in the Circuit Court of Clinton County, by the then prosecuting attorney of that county, by leave of court obtained, and at the relation of certain taxpayers and citizens of the school districts hereinafter mentioned, which, after alleging the existence, on April 3, 1917, of the School District of Lathrop and of Common School Districts Nos. 44 and 45, charged that respondents were "acting and using illegally the offices and franchises as school directors" of "Lathrop School District," and were claiming without any legal right the offices of "directors of School Districts Nos. 44 and 45, and of said School District of Lathrop," all in Clinton County, which offices it was charged were not warranted by law, but were usurped by respondents.

The information alleged that on April 3, 1917, the School District of Lathrop had within it more than two hundred children of school age, and that Districts Nos. 44 and 45 were duly organized and existing as common school districts. It was further alleged that on April 3,

1917, "at the annual school meeting in said three school districts, a proposition was wrongfully and illegally submitted to and adopted by the voters of said three districts, to change and extend the boundary lines of said School District of Lathrop so as to include therein all the territory and lands in Common School Districts Nos. 44 and 45, and thereby unlawfully and illegally consolidate said three districts in one district known as Lathrop School District." Although the information alleges that the proposition voted upon and adopted on April 3, 1917, was one to "change and extend the boundary lines of the School District of Lathrop so as to include therein" the lands and territory of Districts 44 and 45, the relators contend, and emphasize the contention, that what was then done was an attempt to form a consolidated school district, and apparently attached some significance to the fact that the School District of Lathrop is designated as "Lathrop School District" in the petition on which the elections were held. It is conceded that the School District of Lathrop had more than two hundred children of school age on April 3, 1917, and was a city district, Lathrop being a city of the fourth class.

The answer or return to the writ denied that the persons named as relators had such interest in the matters alleged as to make them proper parties to prosecute the action; admitted the submission and adoption of the proposition to extend boundary lines; denied that it was illegally submitted and adopted; set forth the presentation of the petition signed by ten qualified voters of said three school districts, the causing of notice of the submission to be given in the three districts by posting in at least five public places in Districts 44 and 45, and publication in the only newspaper in the School District of Lathrop, for fifteen days prior to April 3, 1917, the date of said annual meetings; the casting of the vote of a majority of the qualified voters of each of said districts in favor of said proposition; certification of the result thereof to the clerks of said districts; certification by them to the Superintendent of Public

Schools and to the County Clerk of Clinton County and action thereon and acquiescence therein; that thereafter the Board of Education of the School District of Lathrop levied taxes upon all property within the boundary lines as changed, and caused enumeration of all children therein of school age to be taken; that all tax moneys and moneys from the State were paid to the treasurer of the School District of Lathrop; that said Districts 44 and 45 turned over all of their property to said School District of Lathrop, and wholly ceased to exist or function as school districts; that two of respondents were residents of the territory taken in by the extension, respondent Rogers of the territory of which District 44 was composed, and respondent Trice of the territory formerly included in District 45, chosen by the electors of School District of Lathrop as now existing, and as successors to others formerly constituting said Board of Education of the School District of Lathrop. The answer further pleaded laches of relators, and that they were estopped from prosecuting the action.

The reply pleaded that the attempted change of boundary lines so as to include the territory of all three districts was unlawful and contrary to the forms of law governing the formation of consolidated school districts, and the law governing the annexation of districts to city or town school districts, and prayed that respondents be ousted. The cause was submitted to the court and no declarations of law were asked or given.

A consolidated school district cannot be formed so as to include within it a city or town school district which contains, at the time, two hundred or more children of school age. This is clear from the provisions of Sections 11255 and 11258, Revised Statutes 1919, in force at the time the elections were held. Under Section 11255 a consolidated school district can be formed having within it a village school district having less than two hundred children of school age, and under Section 11258 it is provided that no such district shall be formed under the provisions of Article IV covering consolidated school

districts which shall include within its territory any town or city district that at the time of the formation of such consolidated school district has two hundred children of school age. The respondents concede that the School District of Lathrop and Districts Nos. 44 and 45 could not form a consolidated school district. Their contention is that there was no attempt to form a consolidated school district. Consolidated school districts constitute a distinct class of school district, under the statute; as much so, as do common school districts, or city, or town school districts. Two methods of forming consolidated school districts are provided.

The first is under Section 11255, which authorizes the formation of a consolidated school district, out of three or more common school districts, or, out of a village district having less than two hundred children of school age, together with two or more adjoining districts. This contemplates the consolidation of several entire districts, and this, it is provided, may be done in accordance with the provisions of Section 11201 (State ex inf. Thompson v. Scott, 304 Mo. 664, 264 S. W. 369). This is not done under the provision for changing boundary lines but for forming a new district, under Section 11201. Such district "shall organize at a special meeting within fifteen days after the formation thereof."

The other consolidated school district authorized to be formed is one by the qualified voters of a community. This is formed under the provisions of the Act of 1913 (Secs. 11257, 11258, 11259, R. S. 1919). The initiative step is a petition signed by at least twenty-five qualified voters of the community, filed with the County Superintendent of Public Schools, who shall determine the exact boundaries of the proposed consolidated district. Under either method there is the formation of a *new* district, which becomes a corporate entity, and as such displaces and supersedes, over all the territory embraced therein, the common school districts, or, village district and common school districts, of which the consolidated district is composed. Neither of such things was at-

tempted to be done in the proceedings here under consideration. What was attempted, was to extend the boundary lines of the School District of Lathrop so as to include within it all of the territory within Districts Nos. 44 and 45, and to maintain unbroken the corporate existence of the School District of Lathrop.

The respondents ground their defense of the proceedings had upon the provisions of Section 11201, Revised Statutes 1919 (Sec. 10837, R. S. 1909). The proposition adopted by the voters of each of the three districts pursuant to the petition, and the notices given, was expressly stated to be a proposition for changing district boundary lines under the provisions of Section 10837, Revised Statutes 1909, and that "the boundary lines of the Lathrop School District" (then embracing certain lands described) "shall be extended so as to include all the territory and lands in District Number 44" (describing the lands in District 44) "and in District No. 45" (describing said lands) "which change will make the boundary lines of Lathrop School District include territory and lands as follows:" (describing all of said lands). It is to be observed that in the petition, notices, etc., the city district was called "Lathrop School District." It was so designated, as the existing district whose boundary lines were to be extended, and so designated as the district, to be, after its boundary lines should be extended. Its proper designation under the statute, Section 11236, Revised Statutes 1919, was: "The School District of Lathrop." But, the mere fact that the petitioners and others in the proceedings to extend its boundary lines called it "Lathrop School District" is no evidence of a purpose to organize a new district, a consolidated district—under a new name. It was, and remained, "The School District of Lathrop," a city school district, unless it could become something else by virtue of the provision of Section 11201, and of the proceedings had thereunder.

The provisions of Section 11201 are in part extended by the provisions of Section 11253, so as to apply to

city, town and consolidated school districts. Four distinct things are authorized by Section 11201, and so much of it as is necessary to show the scope of authority thereunder is as follows:

"Section 11201. When it is deemed necessary (1) to form a new district, to be composed of two or more entire districts, or parts of two or more districts, (2) to divide one district to form two new districts from the territory therein, (3) to divide one district and attach the territory thereof to adjoining districts, or (4) to change the boundary lines of two or more districts, it shall be the duty of the district clerk of each district affected, upon the reception of a petition desiring such change, and signed by ten qualified voters residing in any district affected thereby, to post a notice of such desired change in at least five public places in each district interested fifteen days prior to the time of the annual meeting, or by notice for same length of time published in all the newspapers of the district; and the voters, when assembled, shall decide such question by a majority vote of those who vote upon such proposition."

Further on in said section there is found the following other provision: "At all elections to change boundaries the vote of those parties residing in the territory sought to be attached to or detached from a district shall be separately cast and counted by the parties or officers holding such election." Said section is a part of Article III of the laws applicable to common schools. Section 11253, a part of Article IV, concerning city, town and consolidated schools, is as follows:

"All the provisions of Section 11201 relating to the change of *boundary lines* of common school districts, and all the provisions of Sections 11204 and 11205, relating to the division of property between common school districts, shall apply to town, city and consolidated districts."

The effect of Section 11253 was considered in State ex inf. v. Sweaney, 270 Mo. 685. In that case action had been taken to divide a town school district, Dallas Dis-

trict, in Jackson County, into two new districts. The relation and effect of the two sections, then Sections 10837 and 10881, Revised Statutes 1909, were considered and determined, at page 691:

"If Section 10881, supra, had provided that all the provisions of Section 10837, Revised Statutes 1909, should apply to town, city and consolidated districts, then there could be no question but that provision had been made for so dividing such districts, because Section 10837, supra, expressly provides for dividing one common school district into two new districts. But instead of the Legislature saying that all the provisions of Section 10837 should apply to town districts, it merely said that 'all the provisions of Section 10837 *relating to the changes of boundary lines* of common school districts' should apply. Referring then to Section 10837 we find that the only express provision therein for changing boundary lines is the provision for changing 'the boundary lines of *two or more districts.*' Other express provision is made for dividing one district into two new districts. It, we think, becomes at once apparent that the provision for changing the boundary lines of *two or more* districts could not, by any process of construction, be held to provide a way for dividing *one* district into two new districts."

For a like reason it is doubtful whether the provision for changing the boundary lines of two or more districts was intended to provide a way for extending the boundary lines of one district so as to include two other entire districts. A change of the boundary lines of *two or more districts* rather implies the *continued* existence of those districts after the change; the detachment of territory from one and its attachment to another. There is also to be considered the fact, that elsewhere express provision is made for the annexation of an entire school district adjoining any city, town or village district, to such city, town or village district. This is provided for by Secton 11252. Under that section, the district desiring to be attached to the city district takes the initiative.

A special election in that district is called upon the petition of ten qualified voters of that district. If a majority favor the proposition, the city district is not compelled to annex, but may then annex such district by the affirmative votes of a majority of the members of its board of education. The proceedings had in the instant case did not follow the provisions of that section. In this case the petition (the same for each district) was signed by six qualified voters of the city district, by four from District 44, and by one from District 45.

In State ex inf. v. Sweany, supra, l. c. 693, this court held that it was unnecessary to construe Sections 10839 and 10840, Revised Statutes 1909 (Secs. 11204 and 11205, R. S. 1919), made applicable to city, town and consolidated school districts by the provisions of Section 11253, for the reasons that under the plain meaning of Section 10881, and also because the Legislature had provided another method for disorganizing town, city or consolidated districts, Section 10881 could not properly be construed differently from the construction that had been given it. The like reasons seem applicable here. The provisions of Sections 11204 and 11205 seem to refer only to a situation where a new district has been formed, as successor to old districts, over certain territory, and it is necessary to ascertain what are the respective rights of the new district and of the old districts to moneys derived from taxes levied in the territories included.

The relators have proceeded upon the theory that the attempt was to form a new district, a consolidated school district, known as "Lathrop School District;" that such undertaking was unauthorized, and that there is and can be no such corporate body; and on that theory the suit is against respondents as the persons assuming to exercise the offices of school directors of a school corporate body which has no legal existence. The information also presents the theory that the School District of Lathrop and School Districts Nos. 44 and 45 still exist as corporate bodies, and that respondents as

school directors of "said Lathrop School District," a consolidated school district, illegally claim and usurp the offices of directors of the School District of Lathrop and of Districts Nos. 44 and 45.

The rule seems to be firmly settled that where the incorporation of a town or of a school district is attacked in *quo warranto* proceedings, the persons acting and assuming to be the officers of such town or school district are the proper parties, and the town or school district is not a proper party, and this, for the reason that the incorporation is denied. [State ex inf. v. Woods, 233 Mo. 357; State ex inf. v. McClain, 187 Mo. 409; State ex inf. v. Fleming, 158 Mo. 558; State ex inf. v. Fleming, 147 Mo. 12; State ex inf. v. Clardy, 267 Mo. 371; State ex rel. v. Gravel Road Co., 116 Mo. App. 175; State ex rel. v. Small, 131 Mo. App. 470-478.] The record in this case fails to show that there was an attempt to organize a new district or form a consolidated school district, and it further fails to show that the respondents were acting as officers or using the officers of school directors of a consolidated district, or attempting to do so. It shows conclusively that the School District of Lathrop was a corporate body, and continues to be such, but that it, as such, assumes that its boundary lines have been extended, and that its corporate franchise applies to and governs the territory and persons within such extensions, as well as within its original territory.

It was pleaded and shown that the results of the elections were certified to and accepted by the county officials and found by the trial court that after April 3, 1917, School Districts Nos. 44 and 45 ceased to function; maintained no schools; levied no taxes; made no enumeration of children of school age; but, that, after said date, all functions in the maintenance of a school, the levy of taxes, and receipt of school moneys from the State, and otherwise, had been performed as for and by the School District of Lathrop, for all the territory, and persons within the territory included within the three districts. These things and recognition thereof by the

state and county authorities, and acquiescence therein by relators, were pleaded in the answer as constituting laches on the part of relators, and operating as an estoppel upon them to question the validity of what had been done.

The trial court found that as the result of the elections of April 3, 1917, and proceedings thereunder, there was a change of the boundary lines of the School District of Lathrop, and that "by reason of the change of boundary lines of said School District of Lathrop," Districts Nos. 44 and 45 became and were incorporated into the School District of Lathrop, and that the change had been so "acted upon and accepted by the proper authorities of the State of Missouri, and the said three districts treated as one school district known as the School District of Lathrop." The court also found that the respondents, at the time of the issuance of the writ, were the "legally elected, qualified and acting members of the Board of Education of the School District of Lathrop, and that said School District of Lathrop, including former Common School Districts 44 and 45, is legally organized as a town and city school district of said county," and adjudged that the "liberties, privileges and franchises of the office of members of the Board of Education of the School District of Lathrop be allowed" to the respondents. If it be conceded that the change of boundary lines of the School District of Lathrop and inclusion thereby of additional territory was unauthorized, the concession, under the conclusive facts in the record, does not destroy the corporate existence of that district. Appurtenant and appropriate to that are the offices of six school directors, or members of its board of education. If the attempted extension of territory was unauthorized, that did not disorganize the School District of Lathrop, nor abolish the offices of directors of that district.

As the case stands upon the record made it is one in which a valid corporation has attempted to assume jurisdiction or ownership of, and has exercised jurisdic-

tion or ownership over territory, to which its right is challenged and is open to question; but, that goes only to the validity of the attempted appropriation, and does not affect the lawful organization of the corporation itself. The question of whether or not the extension was valid can be answered either yes or no without affecting the validity of the corporation—the School District of Lathrop. For the determination of the question the School District of Lathrop is a proper party, indeed, a necessary party. The rule is stated in State ex inf. v. McClain, 187 Mo. l. c. 414, taken from 23 Am. & Eng. Ency. Law (2 Ed.) 622, and is as follows: "*Quo warranto* to test the right of a legal municipality to exercise jurisdiction over certain territory, as in cases of attempted extension of corporate limits, may be brought directly against the municipality, but when the right to exercise jurisdiction over territory depends upon the legality of an organization as a municipal corporation, the individuals assuming jurisdiction are the proper defendants according to the usual rule already stated."

The same rule had been announced in State ex inf. v. Fleming, 158 Mo. 558. That was a proceeding in *quo warranto*. The defendants were the mayor and other officials of the city of Webster Groves. In that proceeding the information directly challenged the validity of the incorporation of the City, and for that purpose the persons acting as officers were the proper parties defendant, but there was also raised the question of the validity of an extension of the boundaries of the city, subsequent to its incorporation. The informants sought to have that question determined in the same proceeding. To that request this court said, l. c. 567:

"To have made the city a party defendant, as informants by motion sought to have done after the cause upon its merits had been submitted to the court, in order that an inquiry might properly be made into the charge that it had abused its franchise or usurped powers and liberties not lawfully possessed, such as the incorporation of territory over which it had no control, would

have been a recognition of the lawful existence of the very corporation which the informants by the proceeding against the individual respondents sought to impeach the validity of.

"The proceedings in this case against the individual respondents and against the city would have been incon sistent. The city not being a party, the question as to the alleged exercise by it of an unlawful power as charged by informants could under no circumstances be here inquired into. When the proceeding is to restrain a corporation from the unlawful exercise of a franchise to it belonging, or to oust corporation from the exercise of a franchise which it usurps, it must be against the corporation itself, and not against its officers."

The rule, in both aspects was stated in State ex inf. v. Woods, 233 Mo. 357, which was a proceeding challenging the incorporation of the city of Wellston as a city of the third class, brought against its officers. It was said at page 382: "A question was propounded from the bench during oral argument directed to the absence of the town of Wellston as a party defendant. That question has received the attention of counsel in supplemental briefs. It has been held that the officers of a town where its incorporation is challenged are the proper parties in *quo warranto*. The town is a proper party under certain circumstances discussed by the books, but this case is not of that class. [See authorities infra, State ex rel. v. Coffee, 59 Mo. 59; (Vide p. 67 et seq.); State ex rel. v. McReynolds, 61 Mo. 203, p. 212; State ex inf. v. Fleming, 147 Mo. 1 (pp. 8, 9); s. c., 158 Mo. 551 (pp. 567-8); State ex inf. v. McClain, 187 Mo. 409 (p. 414); State ex rel. v. Gravel Road, 116 Mo. App. 175 (pp. 193 et seq.); State ex rel. v. Small, 131 Mo. App. 470 (pp. 478 et seq.).]"

Relevant to the foregoing the case of State ex inf. v. Kansas City, 233 Mo. 162, may be mentioned. The nature of the proceeding, *quo warranto,* is thus stated at page 171: "The purpose and object of the suit, as shown by the prayer of the information, is that this court may adjudge illegal and void an alleged amend-

ment to the charter of Kansas City, seeking to include within the limits of the municipality a large body of contiguous territory, and that the respondent be ousted of all power, rights and jurisdiction in and over the territory attempted to be annexed by the said pretended extension of its limits.'' In this case a writ of ouster was denied; but the question whether the city, as a lawful and going municipal corporation, was the proper and necessary party in a *quo warranto* proceeding to determine whether an extension of its limits had been lawfully made, was not raised.

In State ex inf. Killam v. Consolidated School District, 277 Mo. 458, the proceeding was described as ''an information in the nature of a *quo warranto* at the relation of eighteen taxpaying citizens of School District No. 37 of Lincoln County, the purpose of which was to oust the respondent from exercising authority over the territory of District No. 37.'' The incorporation of the respondent was alleged, and no question raised as to it being the proper party.

Under the facts in this record conceded, or conclusively appearing, the respondents were assuming to act, and exercising the offices of directors or members of the Board of Education of the School District of Lathrop, a body corporate all of the time duly organized and existing. Their acts as affecting the territory included within Districts Nos. 44 and 45 are attributable solely to the official relation of respondents to the School District of Lathrop. The validity of their acts in respect of that territory depends solely upon the validity of the extension which the school district undertook to make, of its boundary lines, so as to include that territory.

Counsel for relators in their briefs have stated the issue as follows:

''In this proceeding the respondents are called upon directly to show their right to exercise collectively the duties of the governing body of a *quasi*-corporation for school purposes. That right depends upon the

*existence of the office,* and the existence of the office depends on the *existence of the municipality* to which it pertains. They must show its existence in return to the challenge of the State, and in doing so must plead the existence of the facts necessary to its creation.''

The pleadings show the existence, past and present, of the corporation, the School District of Lathrop. The existence of the offices of directors of that district arises out of the law. The evidence fails to show assertion of authority by a consolidated school district, or attempt to do so by such a district, or by respondents as directors of such a district, but shows exercise of authority by the School District of Lathrop. The charge made was that the authority said to be unlawfully exercised was exercised by and for an alleged consolidated school district, not legally incorporated, and the record shows that the authority exercised is by and for a legal body corporate, and the primary question is the validity of an extension of its boundary lines.

For the determination of that question the School District of Lathrop is a necessary party. The real question arising upon the whole record made is whether the School District of Lathrop, a legal body corporate, has the right to exercise authority over the territory in dispute, or is illegally exercising over that territory its franchise and powers as a city school district. That question is not properly determinable in a *quo warranto* proceeding to which the corporation itself is not made party. For that reason the question of laches of relators and of estoppel is not now determined.

The evidence shows that respondents Rogers and Trice were not residents of the original School District of Lathrop, but that Rogers was a resident of District 44 and Trice a resident of District 45. Since it is not proper in this proceeding to adjudge that the territory of those districts was not incorporated into the School District of Lathrop, for that reason, it is not proper, to determine that said Rogers and Trice should be ousted

---

---

from the offices of directors of the School District of Lathrop.

The judgment of the trial court in that it denied a writ of ouster against the respondents as directors of the School District of Lathrop should be affirmed, and in that it adjudged the extension of the boundary lines of the School District of Lathrop, valid, so as to include and incorporate therein the territory and lands of Districts 44 and 45, should be reversed without prejudice, as being rendered without jurisdiction of the School District of Lathrop, necessary party to the determination of that question. *Seddon, C.,* concurs.

PER CURIAM:—The foregoing opinion of LINDSAY, C., is adopted as the opinion of the court. All the judges concur, except *Atwood, J.,* not sitting.