Lester ENGLAND, Julia England, C. L. Mc-Baine, G. H. McNab, J. D. McNab and James J. Bamrick, Petitioners,

v.

Leonard ECKLEY, Clerk of Consolidated School District No. 2, Audrain County, Missouri, and Leonard Eckley, Secretary of the Board of Consolidated School District No. 2, Audrain County, Missouri, and Leonard Eckley, Raymond Bryson, Irvin Blackwell, George I. Neal, Charles Davenport and Leon F. Terry, Members of the School Board, Consolidated School District No. 2, Audrain County, Missouri, Respondents.

Herbert BEAMER, Artie F. Lewis, Mrs. Artie F. Lewis, Clyde James and W. C. Donaldson, Petitioners,

v.

Leonard ECKLEY, Clerk of Consolidated School District No. 2, Audrain County, Missouri, and Leonard Eckley, Secretary of the Board of Consolidated School District No. 2, Audrain County, Missouri, and Leonard Eckley, Raymond Bryson, Irvin Blackwell, George I. Neal, Charles Davenport and Leon F. Terry, Members of the School Board, Consolidated School District No. 2, Audrain County, Missouri, Respondents.

Nos. 30226, 30227.

St. Louis Court of Appeals.

Missouri.

March 17, 1959.

Motion for Rehearing or to Transfer to Supreme Court Denied April 13, 1959.

Alexander, Welliver & Wayland, Ralph L. Alexander, Warren D. Welliver, Columbia, for petitioners.

Barnes & Barnes, Latney Barnes, Van Matre & Van Matre, William W. Van Matre, Jr., Mexico, for respondents.

HOUSER, Commissioner.

These are two mandamus proceedings brought separately by two different groups of citizens and taxpayers of Consolidated School District No. 2 of Audrain County (hereinafter "C–2") to compel the members, clerk and secretary of the board of directors of C–2 to post notices, advertise and conduct an election on the proposition of changing the boundaries of the school district in accordance with petitions to remove certain lands from C–2 and add them to Centralia Reorganized School District No. 6 of Boone County (hereinafter "R–6"). Petitioners proceeded under section 165.294. (All section references relate to R.S.Mo., 1949, V.A.M.S. unless otherwise indicated). The Circuit Court of Audrain County issued its alternative writ in each case. The returns and replies raised identical issues, namely: (1) whether the proceeding was a lawful attempt to change the boundaries, or an illegal attempt to encroach upon the lands of C–2 for the purpose of annexation of its territory to the territory of R–6, with the intent to destroy C–2 both in area and value, under the guise of a change of bound-

aries; (2) whether the petitions for a change of boundaries were legally sufficient, for failure (a) to allege or aver any necessity for the change of boundaries, (b) to adequately describe the boundaries of the property to be removed. The cases were consolidated for the purpose of trial. Following a hearing the Circuit Court of Audrain County entered judgment in each case quashing the writ and dismissing the petition. Petitioners appealed from the judgment in each case. The appeals were consolidated and will be disposed of in one opinion, since the legal problems are identical and the factual situations are so closely related as to be identical for all practical purposes.

C–2 is an inverted L-shaped district substantially all of which is located in the western part of Audrain County. R–6 adjoins C–2. R–6 is located in the northeastern part of Boone County.

The map illustrates the geographical situation. C–2 consists of 178 square miles of which Area 1 is 43 square miles (24%); Area 2 is 80 square miles (45%) and areas 3 and 4 total 55 square miles (31% of C–2). The total assessed valuation of the real estate in C–2 is $3,587,120. The real estate in Area 1 is assessed at $902,240, that in Area 2 at $1,728,350, and the combined assessed valuation in Areas 3 and 4 is $956,-530. Areas 1 and 2 are involved in the two cases here for review. Acting under § 165.294, petitions affecting the boundaries of Areas 1 and 2 were filed with the clerk of C–2 on January 29, 1958. No question about the number, residence or genuineness

of the signatures on the petitions, the timeliness of filing, the sufficiency of the descriptions in the petitions or necessity of the change was discussed, raised or heard by the board members. In February and March, 1958 several additional petitions were received by the clerk of C–2. The latter petitions sought to remove either Area 3 or Area 4 or both Areas 3 and 4 from C–2 and place them in R–6. One petition was received to remove Areas 3 and 4 and place them in Mexico School District. The petitions relating to Areas 1 and 2 were turned down by the board of C–2 in March, 1958. These proceedings in mandamus were instituted the following May. Petitions under § 165.294 affecting the boundaries of Areas 1 and 2 were also filed with the secretary and board of R–6. Propositions to change the boundaries of C–2 to include these areas in R–6 were placed on the annual school election ballot in R–6, where they carried by a vote of 312 to 63 in favor of changing Area 1, and 301 to 69 in favor of changing Area 2.

The principal and controlling question is whether petitioners properly proceeded under section 165.294 or whether they should have proceeded under section 165.300. The former section prescribes the procedure for changing the boundary lines in any six director elementary or high school district. The latter section prescribes the procedure for annexation when an entire school district, or a part of a district, desires to be attached to an adjoining city, town, consolidated or village school district. The question in a capsule is whether petitioners were undertaking to change boundary lines in a lawful manner, or endeavoring to accomplish annexation in an unauthorized manner. We have concluded that petitioners were endeavoring to annex and attach a part of one school district to an adjoining district in an unauthorized manner; that they were not merely changing boundary lines; that they chose the wrong procedure to accomplish this objective, and

that the circuit court properly upheld the rejection of the petitions by the board of directors of C–2.

█ Section 165.294 prescribes the procedure for the arbitration of boundary line disputes, see State ex rel. Reorganized School Dist. R–2 of Newton County v. Robinson, Mo.App., 276 S.W.2d 235, and for the making of relatively minor changes or alterations of boundary lines for established elementary or high school districts which, in the administration of the affairs of such districts, may become necessary in order to promote the convenience of the patrons of the district, or alleviate situations of hardship, or which otherwise may be necessary. Section 165.294 was not intended to provide a method for the extension or adjustment of boundary lines of an established district in such a manner as to either encompass, absorb, obliterate or consolidate with the whole of an adjoining district or districts. In this connection see Reorganized School Dist. No. R–8 of Lafayette County v. Robertson, Mo.Sup., 262 S.W.2d 847; State ex inf. Otto ex rel. Harrington v. School Dist. of Lathrop, 314 Mo. 315, 284 S.W. 135; State ex inf. Pulley ex rel. Harrington v. Scott, 307 Mo. 250, 270 S.W. 382; State ex rel. Consolidated School Dist. No. 2 of Pike County v. Ingram, Mo.App., 2 S.W.2d 113; Farber Consol. School Dist. No. 1 v. Vandalia School Dist. No. 2, Mo.App., 280 S.W. 69. Nor was section 165.294 designed to authorize major surgery by detaching a substantial portion of the land area, school district population or assessed valuation from one established school district and adding it to another. By the provisions of section 165.-300 the General Assembly has prescribed the statutory method of accomplishing the latter objective. State, at Inf. of Taylor ex rel. Schwerdt v. Reorganized School Dist. R–3, Warren County, Mo.App., 257 S.W.2d 262. In Schwerdt we held that section 165.170, the statutory predecessor of section 165.294, was not the appropriate

procedural statute to accomplish the release of two separate portions, but not all, of the territory of a school district for annexation by two other school districts. In that case we pointed out that the change of boundary lines statute there involved was inapplicable for the reason, among others, that section 165.190, subdivision 3, which is still the law, provided that

"* * * districts or parts of districts lying in another county, but adjoining a district that contains a city, town or consolidated school district, may become a part of the city, town or consolidated school district in the same manner as provided in section 165.300;"

that all other statutory methods were excluded by virtue of the fact that the General Assembly in section 165.190, subdivision 3, and section 165.300 had expressed the method by which a part of a district lying in one county but adjoining a school district located in another county may be attached to the latter. We adhere to that view and our analysis of that situation is fully applicable here. What petitioners are seeking here is *annexation*, not merely a "change in boundaries." In a very broad sense every annexation involves a change in boundaries but "change in boundaries" as used in section 165.294 does not envision the extensive changes contemplated by these petitions—the release and annexation of 43 square miles or 24% and 80 square miles or 45%, respectively, of the territory of a district. This is annexation.

"The verb 'to annex' is derived from the Latin annectere, meaning to tie or bind to, and is defined as follows: 'To join (one thing to another), as by physical means; to attach; often, specifically, to subjoin': Webster's New International Dictionary." In re Annexation to City of Easton of Land in Williams Tp., Northampton County, 139 Pa.Super. 146, 11 A.2d 662, loc. cit. 664.

"The term 'annex' means to add or unite to something already existing; to subjoin; to affix; as, to unite a province to a kingdom, a codicil to a will, a condition to a grant. In Black's Law Dictionary the word 'annexation' is thus defined: 'The act of attaching, adding, joining, or uniting one thing to another; generally spoken of the connection of a smaller or subordinate thing with a larger or principal thing. * * * So, the incorporation of newly acquired territory into the national domain, as an integral part thereof, is called "annexation," as in the case of the addition of Texas to the United States.'" Maumee School Tp. v. School Town of Shirley City, 159 Ind. 423, 65 N.E. 285, loc. cit. 286.

Petitioners should have proceeded under section 165.300 and the trial court properly refused to compel respondents to proceed under section 165.294.

■■ While we are here reviewing only the judgments affecting Areas 1 and 2 we cannot close our minds to the possibilities inherent in the situation disclosed by the evidence. In addition to the petitions relating to Areas 1 and 2, various other petitions were filed initiating proceedings which, if carried to fruition, could have resulted in the abolition and extinguishment of C–2 by the incorporation of all of its territory into R–6. Thus under the guise of changing the boundaries between the districts, C–2 eventually could have been completely swallowed up by R–6. Furthermore, as pointed out in the memorandum filed by the circuit judge, and in respondents' brief, appellants, by professing to seek only a change in boundaries under section 165.294, could "cause large areas of one established school district to be annexed to another, notwithstanding that the part of the district remaining thereafter would not contain within its limits thirty children and thirty thousand dollars assessed valuation,

or thirty children and nine square miles of territory, all as specifically required by Section 165.300." If absorption by R–6 of all of C–2 is to be the ultimate result, petitioners should proceed properly to accomplish the transition in an orderly manner and under prescribed methods. If petitioners desire a *consolidation* of R–6 and C–2 they may submit the proposition of consolidation under the provisions of section 165.273. If their objective is merely that of *detaching* Areas 1 and 2 from C–2 *and annexing* to R–6 they may pursue the procedure set out in section 165.300. If they contemplate the *dissolution* of C–2, section 165.310 provides the method. A two-thirds vote of the resident voters and taxpayers is required by section 165.310 to accomplish dissolution, but the various petitioners under section 165.294 apparently are seeking to accomplish the same result, piecemeal, by simple majority vote. They may not accomplish the annexation, consolidation or dissolution of the district under the guise of changing the boundaries.

These considerations being dispositive of the whole case, we need not consider the second question raised, namely, whether the petitions for change of boundaries were legally sufficient.

Accordingly, the judgments of the circuit court in Cases Nos. 30,226 and 30,227 should be affirmed, and the Commissioner so recommends.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The judgments of the circuit court in Cases Nos. 30,226 and 30,227 are, accordingly, affirmed.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.