THE STATE ex inf. BERKLEY, Prosecuting Attorney, at the Relation of McCORMACK, Appellant, v. McCLAIN et al.

Division One, March 15, 1905.

1  QUO WARRANTO: School District: Character.  A statutory *quo warranto* proceeding begun by a prosecuting attorney at the instance of a taxpayer to test the legality of the organization of a school district, is not a common law *quo warranto* which may be filed *ex officio* by the prosecuting attorney without leave of court, but is such a proceeding as the court may entertain or refuse to entertain according to a wise judicial discretion.

2.  ———: ———: Against Whom Brought. A *quo warranto* proceeding to test the legality of the organization of a school district should be brought against its individual directors.

3.  NEW SCHOOL DISTRICT: Who May Appeal.  Where the existing school districts, from which parts are to be severed to make up a new district, do not agree upon the proposition to form a new district, the appeal provided by the statute to the county commissioner may be taken by the ten qualified voters of the district to be established who set the legal machinery in motion for its creation.

4.  ———: ———: Arbitration Board.  The ten legal voters of the new school district who originated the proceedings for its formation, have the right, if the districts to be affected disagree, to a second hearing before the county commissioner and the arbitration board provided for by the statute whose decision is the final one.  In such case the arbitration board acts as a sort of appellate tribunal.

5. ————: ————: **Oath of Arbitrators and Witnesses.** The statute does not require the arbitrators provided for by the statute to finally determine whether a new district shall be created by severing parts of other districts, to be sworn. Nor does it require the witnesses which appear before it to be sworn. It only requires them to be disinterested taxpayers of the county. The general statute in reference to arbitrators does not apply to such proceeding.

6. ————: **Qualified Voters: Showing.** Before a new school district formed by severing parts of existing districts can be shown to have resulted from the votes of persons not qualified to vote, it must be shown how they voted on the proposition. If their votes determined the matter one way or the other, that fact must be shown. A simple showing that they were not legal voters is not sufficient.

Transferred from St. Louis Court of Appeals.

AFFIRMED.

*Jos. G. Williams* and *Sam Byrnes* for appellant.

(1) Both the information and amended return contain affirmative averments that the proposition was defeated in three of the four school districts, and carried, according to the votes as cast, in one. The agreed facts on the trial, in respect to the voting, are that the proposition was defeated in three of the districts, and that in one, to-wit, School District No. 1, Township 39, Range 5, it was carried by the votes as returned by the election officers, by a majority of two votes. The testimony shows that at the voting in this school district there were two votes cast and counted for the proposition by persons not entitled to vote, namely, one by Rev. J. M. England, who resided in the parsonage at Plattin Station, which was not in the district, and one by Frederick Mathews, who was not a citizen of the United States, and that the proposition was defeated in said district by its failure to receive a majority of the legal votes cast. The proposition not having carried in any of the districts, the matter could not have been re-

ferred to the county commissioner. He could not have acquired jurisdiction to act in respect to the matter. And arbitrators selected by him could not have reversed the will of the voters of the four districts, as expressed at the annual meeting. Secs. 6994, 9742, 9759, R. S. 1899; School Dist. v. Burris, 84 Mo. App. 654. (2) The court erred in refusing to declare the law, as embodied in declaration of law numbered two, asked by plaintiff. (3) The action of the arbitrators in acting without being sworn, and upon unsworn testimony, would have invalidated their proceedings. If it may be held to have been within the legislative intent, in the passage of section 9742, Revised Statutes 1899, to authorize arbitrators to pass on and decide matters relating to the taking of territory from school districts without being themselves sworn as arbitrators, and upon the unsworn statements of persons assuming to appear before them as witnesses, as was done in the case at bar, the provisions of the section, in so far as it attempts to clothe arbitrators with such powers, are invalid, as being in conflict with the State Constitution. Sec. 9742, R. S. 1899; sec. 30, art. 2, Constitution.

*Edwin J. Bean* and *James F. Green* for respondents.

(1) The county school commissioner had jurisdiction and his decision and that of the board of arbitrators is final. Sec. 9742, R. S. 1899; State ex rel. v. Denny, 94 Mo. App. 559; State ex rel. v. Burford, 82 Mo. App. 343; School District v. Burris, 84 Mo. App. 654; State ex rel. v. Stone, 152 Mo. 202. (2) The qualification of voters will not be inquired into in a proceeding by *quo warranto*. State ex rel. v. Vail, 53 Mo. 97; State ex rel. v. Francis, 88 Mo. 560; State ex rel. v. Mason, 77 Mo. 189; State ex rel. v. Townsley, 56 Mo. 107.

MARSHALL, J.—This is a proceeding under the statute in the nature of a *quo warranto*, instituted by the prosecuting attorney of Jefferson county, at the instance of a citizen, to oust the defendants from the position of school directors of school district No. 5, townships 39 and 40, ranges 5 and 6, of said county. The real question in the case is whether said school district was ever legally organized. On the one hand it is claimed by the defendants that said school district was legally made up, by taking parts of four contiguous school districts and forming said parts into a new district, and on the other hand the relator claims that the prerequisites and proceedings provided by statute for the formation of a new school district, by severing the constituent parts from existing districts, were not complied with.

The circuit court ordered judgment for the defendants, and the relator appealed to the St. Louis Court of Appeals, and that court certified the case to this court on the ground that this court has appellate jurisdiction of the case.

I.

The petition was filed by the prosecuting attorney of Jefferson county, at the instance of Mitchell McCormack, a resident taxpayer of the district to be formed. It is, therefore, a proceeding in the nature of a *quo warranto* or statutory *quo warranto*, such as is provided for by section 4457, Revised Statutes 1899, and not a *quo warranto ex officio*. The statute requires the prosecuting attorney to file such a proceeding when requested by an interested citizen, and forbids the prosecuting attorney from dismissing or discontinuing it without the consent of the person who set it in motion. It is, therefore, such a proceeding as the court may entertain or refuse to entertain according to a wise judicial discretion, and is not a common law *quo warranto* which may be filed *ex officio* by the Attorney-General or prosecuting attorney without leave of court. The

trial court granted leave to file this case, and there is no abuse of judicial discretion apparent in its action.

## II.

The petition is bottomed upon the predicate that the defendants have no right to hold the office or place of directors of school district No. 5, townships 39 and 40, ranges 5 and 6, not because they have usurped or intruded themselves into office or wrongfully hold or execute such office, but because there is no such school district legally existent, and hence there is no such office. No claim is made that the defendants were not legally elected to, and rightfully exercise the powers of, the office or place or franchise of school directors of said district if there is such a district, but on the contrary it appears from the petition and the return and the agreed statement of facts, upon which this feature of the case was submitted to the court, that such is the fact; that relator voted for them for such office and in truth induced one of them to become a candidate therefor.

This being true there is no question in this case that the defendants are entitled to hold the office, if there is such an office, and the question then arises at once whether the existence of such an office can be called in question in this proceeding, or whether the *quo warranto* should be directed against the school district itself.

The general rule in England and this country is thus laid down in 23 Am. and Eng. Ency. Law (2 Ed.), p. 622:

"*Public or Municipal Corporations.* It is sometimes held that *quo warranto* proceedings to oust a *de facto* public or municipal corporation from its corporate franchise may be brought directly against the corporation in its corporate name. But the better opinion seems to be that where the proceedings are based upon an original lack of authority the proceedings must be

against the individuals who unlawfully assume to be a municipal corporation, while in cases of forfeiture, or the usurpation of particular franchises, the proceedings should be against the corporation as such. This is the rule as to private corporations, and there seems to be no reason for any distinction. Sometimes it has been held that the question of corporate existence could be tried in proceedings against the officers of the municipality. But in the absence of statutory authority for such a proceeding, while corporate existence may be determined as an incident to the trial of the right to exercise a municipal office, the judgment is not binding upon the corporation. *Quo warranto* to test the right of a legal municipality to exercise jurisdiction over certain territory, as in cases of attempted extension of corporate limits, may be brought directly against the municipality, but when the right to exercise jurisdiction over territory depends upon the legality of an organization as a municipal corporation, the individuals assuming jurisdiction are the proper defendants according to the usual rule already stated.

"*Private Corporations.* It is usually held that *quo warranto* proceedings to oust from a corporate franchise must be brought against the individuals charged with the unlawful use of the franchise, instead of against the corporation, and it is said that the effect of bringing the proceedings against the corporation in its corporate name is to admit the corporate existence. This rule seems correct in principle where the exercise of corporate franchises is wholly unauthorized from the beginning. Where, however, there was originally a corporate organization, and it is sought to enforce a forfeiture, or where it is sought merely to oust a corporation from the exercise of particular franchises unlawfully assumed, the proceedings must be against the corporation and not merely against its officers, agents and stockholders."

This is the general rule and it was recognized in State ex inf. v. Fleming, 147 Mo. 1.

This case attacks the legality of the organization of the school district, and hence was properly brought against the defendants as individuals.

## III.

The relator contends that the school district was not legally organized, because three of the districts, from which parts were to be severed, voted against the establishment of the new district, conceding that the fourth district from which a part was to be severed voted in favor of it, the proposition was defeated by the vote of a majority of the districts to be affected, and that no appeal was taken to the county school commissioner by the district which voted in favor of the proposition, but that the appeal was erroneously and improperly taken by the ten qualified voters of the district to be established, and therefore the county school commissioner, had no jurisdiction to proceed in the matter.

The facts are as above stated, and the solution of the question depends upon a construction of section 9742, Revised Statutes 1899. That section provides that when it is deemed necessary to form a new district, to be composed of two or more entire districts, or to divide one district to form two new districts from the territory therein, or to change the boundary lines of two or more districts, ten qualified voters residing in any district affected thereby may file a petition for that purpose with the district clerk of each district to be affected thereby, and such district clerks shall post a notice of the desired change, in at least five public places in such districts, fifteen days prior to the annual meeting, and the voters when assembled shall decide such question by a majority vote. "If the assent to such change be given by all the annual meetings of the various districts thus voting, or of the part of the dis-

trict to be divided, each voting separately, the district or districts shall be deemed formed or the boundary lines thus changed from that date; but if all the districts, or parts of districts, affected do not vote in favor of such change, the matter may be referred to the county commissioner; and upon such appeal being filed with him, in writing, within five days after the annual meeting, he shall appoint four disinterested men, resident taxpayers of the county, who, together with himself, shall constitute a board of arbitration, whose duty it shall be to consider the necessity for such proposed change and render a decision thereon, which decision shall be final.'' Further provision is made for subsequent proceedings, about the regularity and compliance with which there is no question in this case, except that relator argues from the provision allowing the board of arbitration a fee of fifteen dollars to be paid by the district or districts taking the appeal at the time said appeal is made, that the appeal must be taken by a district and can not be taken by the petitioners.

It is clear that if the case is one to divide an existing district so as to form two districts and the part to be thus taken votes for the proposition, there could be no appeal, under relator's contention, for in such case the district would not appeal and there would be no other district in existence to appeal. Yet it is perfectly manifest that the statute contemplates an appeal in any case, and in such an instance there would be no one to take an appeal except the ten voters who petitioned for the new district.

But whilst this illustration is sufficient to overcome the relator's contention, there is yet a broader ground to rest an adverse decision upon. The statute allows an appeal when the existing districts, from which parts are to be severed to make up a new district, do not agree to such a proposition. It does not specify who shall make the appeal. It simply says if the districts or parts of districts do not vote in favor of the change,

"the matter may be referred to the county commissioner." This right of reference is not conferred by the express letter of the statute on the district or part of the district that votes in favor of the change, nor does it require that any one of the districts shall have voted for the change. If it did, the statute would have to be strictly followed, for upon the principle of *"expressio unius,"* every other person or body would be excluded from such a right. On the contrary, the statute permits ten voters to put the machinery in motion to create the new district, and it provides two methods for the accomplishment of the purpose intended, to-wit, first, by submitting the proposition to the voters of the several districts, upon the petition of ten voters of the district to be affected, and, second, if the districts do not agree to be changed (not that they shall be divided in vote thereon), of referring the matter to the county commissioner. This clearly contemplates that there shall be two hearings of the matter, and also shows that even an adverse vote of all the districts shall not be a final decision, but makes the decision of the board of arbitration the final decision of the matter. The proposers of the change are entitled to invoke the judgment of both tribunals, and as they have a direct interest in the matter, there is every reason for holding that they have a right to have the matter passed on by the board of arbitration even when the districts have not themselves disagreed. The board acts as a sort of appellate tribunal in such cases.

The contention of the relator is therefore untenable.

## IV.

The relator next contends that the arbitrators were not sworn, and that the witnesses were not sworn, and hence their decision is void.

It is a sufficient answer to this to say that the stat-

ute does not require them to be sworn, and only requires that they shall be disinterested taxpayers of the county. This was evidently considered by the lawmakers a sufficient assurance that they would faithfully discharge their duties.

The statute in reference to arbitrations (chap. 71, sec. 4824) requires arbitrators to be sworn. But that is a code unto itself, and so is chapter 154, section 9742, relating to the formation of school districts, a code unto itself, and as there is no legislative intention apparent that the two shall be construed together, and as they are not *in pari materia,* the courts can not so construe them, nor can they write into the statute any additional qualifications for a board of arbitration in such school district matters.

This contention must also be held untenable.

## V.

Relator further contends that the districts affected did not disagree upon the proposition, and hence the county commissioner had no jurisdiction to proceed, because whilst the fourth district, to-wit, District No. 1, Township 39, Range 5, cast ten votes in favor of the proposition and eight votes against it, nevertheless a majority of the qualified voters of the district did not vote in favor of the proposition, because three votes in favor thereof were cast by persons who were not entitled to vote, to-wit, Rev. J. M. England, the pastor of the Methodist Episcopal Church, South, who resided in the parsonage building at Plattin Station, which was in range 6 and not in range 5; Frederick Mathews, who was not a citizen of the United States, having been born in Germany, and who was brought to this country when about three years old, by his father, and neither he nor his father were ever naturalized, but he voted because he had been a soldier of the United States during the Spanish War, and thought, therefore, that he

was entitled to vote. There was no evidence as to who the third person was.

The testimony shows that Rev. Mr. England did not reside in the district, hence his vote in favor of the change was improperly cast. But in this connection it is only proper to say that he thought he resided in the district, and that it took a survey to determine whether he did or not, and hence he did not knowingly or intentionally vote improperly.

As to Mathews, the testimony shows that the facts are as charged, and that he was not entitled to vote, although he honestly believed that he was. But there is no evidence in this record that he voted in favor of the proposition. The testimony is that he could not remember whether his vote was for or against the proposition, and there is no other testimony on that point in the record. The relator, therefore, failed to prove this contention, and did not offer sufficient evidence to overcome the official and otherwise conceded majority of the district in favor of the change.

This contention must, therefore, be decided against the relator.

This disposes of the case made by the relator. It is therefore, unnecessary to consider the defenses interposed by the defendants. The judgment of the circuit court was in favor of the defendants, and it is right, and is therefore affirmed.

All concur.