THE STATE OF MISSOURI EX REL. SCHOOL DISTRICT NO. 34, LINCOLN COUNTY, MISSOURI, RESPONDENT, v. FLORENCE DIGGS BEGEMAN, ALLIE MONROE, W. P. SMITH, JOHN M. REID AND AMOS RINAMAN, ACTING AS A BOARD OF ARBITRATION, APPELLANTS.*

St. Louis Court of Appeals.   Opinion filed February 7, 1928.

*Corpus Juris-Cyc. References: Evidence, 22CJ, p. 139, n. 46; Schools and School Districts, 35Cyc, p. 835, n. 95; p. 837, n. 2, 6; Statutes, 36Cyc, p. 1173, n. 52.

*Grover C. Huston* for appellants.

*Creech & Penn* for respondents.

DAUES, P. J.—This appeal involves a controversy growing out of the change of boundaries of certain school districts in Lincoln county, Missouri. The school districts are Nos. 34 and 46, respectively. In March, 1927, two petitions were presented to the clerks of the said

districts, asking that a quarter section of land be taken from School District No. 46 and added to School District No. 34. For the present, we will treat the petitions as being in the record, referring to that matter later on in the opinion, each being signed by the proper number of qualified voters of the respective districts.

Proper notices were posted and school meetings were held April 5, 1927. In District No. 46 the majority voted in favor of the change, and in District No. 34 the majority voted against the change. Within five days thereafter, Broady Morris, a resident taxpayer in District No 46, who was, as we must assume, one of the original petitioners for the change, residing in District No. 46 and who owned one hundred fifty-eight acres of the one hundred sixty acres proposed to be taken from one district into the other, filed with Miss Begeman, the county superintendent of public schools of that county, an affidavit for appeal, praying that the superintendent inquire into and determine as the law requires the necessity for such change of the boundary lines. In appropriate time the superintendent appointed four resident taxpayers of that county as a board of arbitration to examine this appeal. The board met at the county seat, to-wit Troy, Missouri, on April 20, 1927, to consider the matter, and made its findings in writing, holding unanimously that a necessity for this change did exist. The superintendent then transmitted the decision of the board of arbitration to the clerks of the two districts. Thereafter School District No. 34, as relator, presented its petition to the circuit court for a writ of *certiorari*, which was issued and served upon the arbitration board as respondents. Thereupon the respondents below filed their return to the writ, and on the same day relator filed its motion to quash the return. The cause was heard in the circuit court, the entire record being offered in evidence, and the court rendered its judgment in favor of relator on its motion to quash. The return was quashed. By appropriate steps the board of arbitration, respondents below, appealed to this court.

There is but a single question involved in the case, and that is as to the proper construction of section 11201, Revised Statutes Missouri, 1919. For a more ready understanding, we will refer to respondent here as School District No. 34, and to the appellant here as the board of arbitration.

The lower court shared the view of District No. 34, that is, that Morris, a resident taxpayer whose land, almost exclusively, was the subject of the election as being placed in one district or the other, could not, when the districts divided on the vote, appeal to the board of arbitration but that such appeal under the terms of the statute of necessity had to be taken by one district or the other. The contention of the arbitration board, on the other hand, is that Morris, being the aggrieved and interested party, a taxpayer whose land was involved

and whose children were affected, had such right of appeal to the board, and on this question the whole case hinges.

In the first place, it is the salutary law that our courts must give a liberal construction to the working of the school laws. Indeed, the section of the statute, supra, requires no records to be kept of many of the jurisdictional prerequisites, and the fair presumption is indulged that preliminary steps have been complied with when the county superintendent entertains jurisdiction on appeal. [State ex rel. v. Andrea, 216 Mo. 617, 116 S. W. 561; School District v. Chappel, 155 Mo. App. 498, 135 S. W. 75.]

In the latter case, this court held that it is our policy not to require extreme technical compliance of the school laws, but only a substantial compliance with the statutes, and that the efforts of laymen who carry into effect the laws pertaining to schools is accomplished when a substantial compliance has been had. As said in School District v. School District, 181 Mo. App. 583, 164 S. W. 688, technical niceties should be brushed aside and we should rather "seek to effectuate the beneficent spirit revealed, in aid of the efforts of well-meaning laymen. Because of this, substantial compliance will suffice."

And, so, while it does not appear from the records actually preserved by the *superintendent* in the case at bar that the petitions for the change were signed by the requisite number of resident taxpayers, it is not denied by the School District that such a petition did exist, and in fact it was proffered as evidence in the trial of this case. The return itself disclosed such facts. The pleadings disclosed that there was an election, resulting in opposite views of the respective districts, and an appeal was taken to the superintendent. The return shows that Morris was a resident taxpayer of School District No. 46, and one of the ten qualified voters of said district who petitioned for a change of boundaries. The petition for a writ of *certiorari* shows the petition duly signed by the requisite number of residents; was presented, calling for a vote of the two districts on the proposition, and also shows how the districts voted on same. We think therefore that we have enough here to show a regularity in the election of the districts and in the appeal to the Superintendent of Schools. So we address ourselves at once to the proposition as to whether under the statute, Morris, an interested taxpayer, whose land was directly affected, could bring this appeal to the superintendent.

Admittedly, the question is debatable. Section 11201, supra, provides that in the event the districts do not agree in their vote, then "the matter may be referred to the county superintendent of schools," who shall call four disinterested freeholders or taxpayers, who, together with the superintendent, shall constitute a board of arbitration, and that such board shall consider the necessity of such proposed change and render a decision thereon, which decision shall be final. Now, so far, it undoubtedly would seem that any interested person,

when he was directly interested, could make this appeal. But the statute further says, in referring to costs incurred by the board of arbitration, that same shall be paid "by the district or districts taking the appeal."

There were one hundred sixty acres of land involved. Morris owned one hundred fifty-eight of same, and it is argued by the board of arbitration that it certainly was within the knowledge of the school superintendent that Morris, a taxpayer in School District No. 46, had five or six children who could not attend school in that district because it was a colored family, but if they were placed in School District No. 34 they could attend schools for colored children in that district, and that all these matters were presented to the board of arbitration and were not disputed. We are not called upon to decide any legal question in that respect. The superintendent and the whole board, in fact, considered Morris a sufficiently interested and aggrieved party to appeal to that board, and the board acted.

Now, as to the exact meaning of the statute. We are inclined to believe that it was the intention of the Legislature, although reference is made that the appealing *district* shall pay the costs, that a party especially aggrieved whose land is directly involved, and, as in this case, almost solely involved, can take an appeal to the school superintendent.

As pointed out by counsel for the board, suppose the controversy involved the proposition to divide one district into two new districts. You would have only one school district, as a matter of fact, involved. Then if the one interested district appealed there would be no other district to defend, and if the one interested district refused to appeal, no one could appeal, whatever the affected interests might be.

The case of State ex inf. v. McClain, 187 Mo. 409, 86 S. W. 135, is referred to by both litigants. That case does not clarify the situation because the statute has been changed in many respects since that time and does not, as we understand it, settle this question. The statute in its present form provides for the changing of the boundary line for a division or consolidation of a school district, or districts, in such a way that if the lower court is correct in this case there could not be an appeal to the county superintendent in several instances.

Another illustration: Suppose there was a proposition to divide one district completely, attaching one portion to one district and the other to another district. If the two adjoining districts voted against the change and that part of the district proposed to be divided which contained the school house and the school board voting separately from the other part as by statute required voted against the change and the part of the district proposed to be divided which had no school house or school board within its boundaries voted for the change, there could be, under respondent district's contention, no appeal as there would be no interested or aggrieved district to perfect

the appeal. Certainly the statute contemplates an appeal in such cases. It appears from the reported cases that our appellate courts have, *sub silentio* at least, treated the appeals of interested taxpayers in cases of this kind as being effective. [See School District v. School District, 254 S. W. 726; State ex rel. v. Stone, 152 Mo. 202, 53 S. W. 1069.]

The cases cited by the district are cases arising in *quo warranto* proceedings, or like cases where it is held that a taxpayer having no peculiar interest to himself save such interest as is public and common to all alike, cannot bring a suit to test the public's right.

We have concluded that a fair construction of the statutes contemplates the right of the person situated such as Morris finds himself to be in this case to appeal the decision of the school vote to the county superintendent for arbitration. It is true, the statute is ambiguous, but a conscionable consideration of the law leaves us convinced that the lawmakers intended to give the directly aggrieved party, such as Morris, the right to a decision by arbitration. The circuit court therefore erroneously decided that the appeal of Morris to the school superintendent was a nullity. The judgment of the circuit court is reversed. *Becker* and *Nipper, JJ.*, concur.