**SCHOOL DISTRICT OF MEXICO, MIS-SOURI, NO. 59, a School District in Audrain County, Missouri (Plaintiff), Respondent,**

v.

**MAPLE GROVE SCHOOL DISTRICT NO. 56, of Audrain County, Missouri (Defendant), Appellant.**

**No. 30105.**

St. Louis Court of Appeals.

Missouri.

May 19, 1959.

Motion for Rehearing or to Transfer to Supreme Court Denied June 15, 1959.

Don C. Carter, Sturgeon, for appellant.

Jackson A. Wright, Fry, Edwards & Wright, Mexico, Mo., for respondent.

RUDDY, Judge.

The School District of Mexico, Missouri, No. 59, in Audrain County, Missouri, brought an action against the Maple Grove School District, No. 56, also in Audrain County, Missouri, to recover tuition for two pupils alleged to be residents of the latter school district who had been assigned to the School District of Mexico by the County Superintendent of Schools of Audrain County, Missouri, under authority of Section 165.253 RSMo 1949, V.A.M.S. The defendant Maple Grove School District has appealed from a judgment against it and in favor of plaintiff School District of Mexico, Missouri.

The School District of Mexico, Missouri, No. 59, is a duly organized and existing School District in Audrain County under provisions of Section 165.263 RSMo 1949, V.A.M.S., relating to City, Town and Consolidated School Districts. The Maple Grove School District, No. 56, is a duly organized and existing Common School District in Audrain County, Missouri, and adjoins the School District of Mexico, Missouri.

Prior to July 1954 Dr. Glen P. Kallenbach resided in Mexico, Missouri, with the members of his family. Sometime in the month of July 1954, he purchased a farm, known as the Winn Farm, located in the Maple Grove School District. He did not move to this farm with his family until October 21, 1954. He and his family are still residing on this farm. Prior to the time he and his family moved on the farm and became residents of the Maple Grove School District his two children attended school in Mexico, Missouri. Sometime before Dr. Kallenbach moved to the farm, he contacted Mr. Davenport, who was president of the Board of the Maple Grove School District, and Howard Maxwell, the County Superintendent of Schools in Audrain County, for the purpose of making arrangements to continue the education of his two children in school at Mexico, Missouri, after he would move his family to the Winn Farm.

Dr. Kallenbach testified he saw Mr. Davenport first and got an opinion from him that the children could continue in the school in Mexico, Missouri, and that the tuition for the children would be paid by the Maple Grove School District. After this opinion was obtained by him, he saw Howard Maxwell, who had been County Superintendent of Schools in Audrain County since 1938 and still served Audrain County in that capacity at the time of the trial below.

Howard Maxwell testified that Dr. Kallenbach told him he was going to move to the Winn Farm and he asked about assign-

ing his children into the School District of Mexico for school purposes. He further testified that sometime after he had been approached by Dr. Kallenbach, he was told by Mr. Davenport the Maple Grove School District agreed to pay the tuition charges for the two children because a precedent had been established on the farm in question when it was operated by the Winn Family, indicating that the children of the Winn Family had attended school in the School District of Mexico, Missouri. However, Howard Maxwell further testified that sometime later Mr. Davenport told him, "he didn't think that the Maple Grove School District were [was] obligated to pay the tuition fees on the Kallenbach children."

On August 17, 1954, Howard Maxwell in his capacity as County Superintendent of Schools of Audrain County executed the following assignment:

*"Assignment of Pupils*

"In compliance with Section 165.-253, Missouri Schools Laws, 1952, the grade school children of Dr. Glen P. Kallenbach are assigned for school purposes to the Mexico School District No. 59 from the Maple Grove School District No. 56, Audrain County, Missouri.

"The assignment shall become effective when the above family establishes residence in school district No. 56 (Winn Farm) and shall continue so long as the provisions of Section 165.-253, Missouri School Laws, 1952 apply to this individual case. It applies to the Kallenbach children who are now of elementary age and to those children of the same family who later shall be of elementary school age."

"Signed
"Howard Maxwell Superintendent
"Audrain County Public Schools."

This order of August 17, 1954, remained in effect and had never been rescinded up to the time of trial in the lower court. At the time the order was made Dr. Kallenbach resided in the School District of Mexico, Missouri, No. 59. Howard Maxwell further testified that the principal reason for executing the assignment was because the School District of Mexico would be more accessible to the two children. He gave as another reason for making the assignment the prearranged agreement that had been made between Mr. Davenport, acting for the Maple Grove School District, and Dr. Kallenbach.

As stated before, Dr. Kallenbach did not move to the Winn Farm until October 21, 1954. The two Kallenbach children became non-resident students in the School District of Mexico, as of the school month of November 1954. They were non-resident students for seven months in the school year 1954–55 and for nine months in the school year 1955–56.

The established pro rata cost of instruction for the School District of Mexico for the 1954–55 school year for each student was $225. It was the same for the school year 1955–56. The pro rata cost of instruction charged by the School District of Mexico to the Maple Grove School District for each of the Kallenbach children was $175 for the seven months of the 1954–55 school term and $225 for the 1955–56 school term. Demand was made upon the Maple Grove School District by the School District of Mexico for payment of the sum of $400 tuition for each of the Kallenbach children and the Maple Grove School District failed and refused to pay said sums.

The evidence further showed that an application had been made by the Maple Grove School District, No. 56, to the State Department of Education for apportionment of school funds of the State to the Maple Grove School District and in this application the District is required to show the "students who were regularly attending school outside of their own district."

In its first point the defendant, Maple Grove School District, contends that the County Superintendent of Schools did not have authority under Section 165.253 RSMo 1949, V.A.M.S., to assign the Kallenbach children from the Maple Grove School District to the School District of Mexico because the children were not pupils in and were not residing in the Maple Grove School District at the time (August 17, 1954) such assigment was made.

The first step to be taken in resolving this point is to examine the language of the statute involved. The pertinent parts of Section 165.253 RSMo 1949, V.A.M.S., are as follows:

"Whenever any pupil is so located that an adjoining school is more accessible, the county superintendent shall have the power and it shall be his duty to assign such pupil to such adjoining district; provided, * * * the attendance of such assigned pupil shall be credited for the purpose of apportionment of state funds to the district in which the student lives, and the board of directors of the district in which said student lives shall pay the tuition of such pupil or pupils so assigned; provided, such tuition shall not exceed the pro rata cost of instruction."

The Maple Grove School District further contends that this statute must be strictly construed and that the power conferred on the County Superintendent of Schools to assign pupils to an adjoining school district may be exercised only when the pupil is actually located and residing in the school district adjoining the one that is more accessible to the pupil. Therefore, it contends the statute requires the two children of Dr. Kallenbach be located in its district before the County Superintendent of Schools had the power to make the assignment and that "then and only then, does the Superintendent have the power to exercise the right of assignment."

It further contends this requirement is mandatory and that there is not one word in the statute which could possibly be construed as giving the County Superintendent of Schools the power to make an assignment to take effect in the future, further stating that he may make the assignment only when the conditions are such as to meet the mandatory terms of the statute.

In support of its position the Maple Grove School District cites the rule found in 67 C.J.S. Officers § 114, p. 404, which reads as follows:

"As a rule a statute prescribing the time within which public officers are required to perform an official act regarding the rights and duties of others, and enacted with a view to the proper, orderly, and prompt conduct of business, *is directory* unless it denies the exercise of the power after such time, or the phraseology of the statute, or the nature of the act to be performed, and the consequences of doing or failing to do it at such time are such that the designation of time must be considered a limitation on the power of the officer. When the legislature prescribes the time when an official act is to be performed, the *broad legislative purpose is to be considered* in deciding whether the time prescribed is directory or mandatory. If the statute is mandatory there must be strict conformity, *but if directory the legislative intention is to be complied with as nearly as practicable.*" (Emphases supplied.)

Also cited is 3 Sutherland Statutory Construction, 3rd Edition (1943) page 102, where the rule is stated as follows:

" * * * A statute specifying a time within which a public officer is to perform an official act regarding the rights and duties of others *is directory* unless the nature of the act to be performed, or the phraseology of the statute, is such that the designation of time must be considered a limitation of the power of the office." (Emphasis supplied.)

It will be observed that the rule relied on by the Maple Grove School District holds that a statute specifying a time within which a public officer is to perform an official act regarding the rights and duties of others is usually directory, not mandatory, and a determination of whether the time specification in such a statute is directory or mandatory is to be gained from a consideration of the legislative purpose in enacting the statute.

In the same authority relied on by the Maple Grove School District, the author said at page 101 (3 Sutherland Statutory Construction, 3rd Edition, (1943)):

"* * * In this determination (whether mandatory or directory) there is seen an outstanding example of statutory construction not on the basis alone of ascertaining the actual intent of the legislature, but on grounds of policy and equity to avoid harsh, unfair or absurd consequences. * * * for obvious reasons founded in fairness and justice, time provisions are often found to be directory merely, where a mandatory construction might do great injury to persons not at fault, as in a case where slight delay on the part of a public officer might prejudice private rights or the public interest. It has been aptly stated that 'when there is no substantial reason why the thing by statute required to be done might not as well be done after the time prescribed as before; no presumption that, by allowing it to be so done, it may work an injury or wrong; nothing in the act itself, or in other acts relating to the same subject matter, indicating that the legislature did not intend that it should rather be done after the time prescribed than not done at all—the courts will deem the statute directory merely.' " (Parenthesis supplied.)

It is to be noted that the time limit is to be construed as mandatory only where the failure to obey the time limit involves prejudice to the public interest or to private rights.

A case relied on by the Maple Grove School District wherein the court held that the failure to obey the time limitation prejudiced private rights is Schlafly v. Baumann, 341 Mo. 755, 108 S.W.2d 363, loc. cit. 366. That case involved the validity of a proposed sale of real estate for delinquent taxes under the Jones-Munger Act. The court found that the dates on which the publication of a notice to sell real estate took place did not comply strictly with the statute. Appellant admitted the questioned publication did not comply strictly with the statute but contended that the provisions of the Jones-Munger Act with respect to the notice to sell should be construed as directory and not mandatory. The court in answering this contention said:

"Exercise of the official action here involved is in derogation of private rights of property, disturbs vested rights therein, and deprives persons of their ownership of property; and this, under the Jones-Munger Act, by ex parte proceedings of a rather drastic and summary nature, based upon constructive notice. The provision for sale on the 'first Monday of November' is for the benefit, protection, and security of landowners, and not for the convenience of officials or the dispatch of their official duties. * * * Statutory provisions prescribing the time and place of tax sales have been strictly construed in favor of the taxpayer and strict compliance therewith rigorously exacted."

An examination of the facts in the Schlafly case shows that the court found the violation of the time limitation set in the statute prejudiced the private rights of the owners of the real estate. We have no such situation present in the instant appeal.

In the case of State ex rel. Acom v. Hamlet, 363 Mo. 239, 250 S.W.2d 495, 498,

the Supreme Court held, quoting from State ex rel. School Dist. No. 34, Lincoln County v. Begeman, 221 Mo.App. 257, 2 S.W.2d 110, loc. cit., 111, as follows:

"'* * * it is the salutary law that our courts must give a liberal construction to the working of the school laws.'"

To the same effect see State ex rel. Reorganized School District, R–2 of Newton County v. Robinson, Mo.App., 276 S.W.2d 235.

A liberal construction of Section 165.253 RSMo 1949, V.A.M.S., would in no way prejudice the rights of the Maple Grove School District because it has been held that school district funds and property are public funds and property of the state and not the private property of the school district. School District of Oakland v. School District of Joplin, 340 Mo. 779, 102 S.W.2d 909.

Supplementing the aforesaid rule of liberal construction where the rights of parties are not prejudiced, is another rule that where no rights are impaired, statutory provisions concerning the time and manner in which public officers are to perform assigned acts are directory. 43 Am.Jur., Public Officers, § 259, page 77.

█ To construe Section 165.253 RSMo 1949, V.A.M.S., to authorize the execution of the assignment by the Superintendent of Schools when and only when the pupil is located in the district adjoining the district where the school is more accessible to the pupil would clearly militate against the interest of the children involved, in whose interest the statute was enacted. 43 Am.Jur., Public Officers, § 259, p. 76. This statute was designed to make it as convenient as possible for the child to attend school and authorized attendance at a school in a district adjoining the district in which the child lives. Under such circumstances courts will construe the law as vesting the officer with permissive power, that is, with the power to make the assignment take effect at the time the children become residents of the school district adjoining that which has the school which is more accessible. To hold otherwise would be to reach the absurd consequences criticized by the authorities. We think it wholly within the purpose of the statute to authorize the assignment of a pupil to an adjoining school at the earliest possible date, when it becomes known that the pupil will, in the future, reside at a location which authorizes such assignment. We think it was the intent of the Legislature that the specification of time related in the statute be merely directory and not mandatory and that the purpose for which the statute was enacted, namely, to benefit school children and make the schoolhouse more accessible to the children will be complied with by giving it the aforesaid construction.

█ Ruling on this first point, we affirm the trial court's holding that the County Superintendent of Schools had the power and authority on August 17, 1954, to assign the children from the Maple Grove School District to the School District of Mexico, said assignment to be effective when the Kallenbach family established its residence in the Maple Grove School District.

█ The next and last point relied on by the Maple Grove School District is that Section 165.253 RSMo 1949, V.A.M.S., applies solely to transfers between Common School Districts and that pupils cannot be assigned from a Common School District to a City School District. It gives as the basis for this contention that Section 165.253 has been placed in the 1949 Revised Statutes under the Laws relating to Common School Districts.

The statute in question had its origin as Section 18 of the School Law of 1931 (Laws of Missouri 1931, page 344). The laws of 1931 contained twenty-one sections pertaining to schools. The Title to these sections is lengthy and no useful purpose would be served in stating it here. It is

sufficient to point out that nowhere in the Title is there a reference to Common School Districts. The reference in the Title pertaining to Section 18 of the School Law of 1931 reads as follows: "providing for the assignment of pupils from one school district to another school district * * *." Not a word is present which would limit assignments to Common School Districts.

An examination of the twenty-one sections enacted by the Legislature in 1931 shows that said sections were not intended to apply solely to any particular class of school districts. Throughout these sections the Legislature constantly used the following terms: "various school districts"; "enlarged school districts"; "any public school"; "each and every school district of this state"; and "each and every district." The references throughout the twenty-one sections show no intent on the part of the Legislature to limit all or any one of these sections to Common School Districts.

A reading of Section 18 of the School Laws of 1931 shows no intent to limit the application of the section to transfers between Common School Districts. The section clearly applies to any school district. If the Legislature had intended Section 18 to apply only to Common School Districts, it could have easily said so. We hold that Section 18 of the School Laws of 1931 as originally enacted does not limit the authority of the County Superintendent of Schools, in assigning pupils to a more accessible school district, solely between Common School Districts.

It is interesting to note that in the 1939 revision of the Statutes, Section 18 of the 1931 School Laws appears as Sec. 10461, Article 4 of Chapter 72 under the heading "1931 School Law." It was not included in the "Laws Applicable To Common Schools." In 1945 the Legislature repealed Sec. 10461 R.S.Mo.1939, and reenacted the section with one minor change. This change provided that the appeal permitted in said section be taken to the State Board of Education instead of the State Superintendent as originally provided. In the revision of 1949 Section 18, as enacted in 1931 and as amended in 1945, appears among the sections applicable to "Common School Districts." This arrangement or codification of Section 18 of the 1931 School Laws does not change the applicability of this statute as it stood when it was enacted. It is to be construed as of the date of its original enactment and not as of the date of the revision. Dillbeck v. Johnson, 232 Mo.App. 743, 122 S.W.2d 412, and State ex rel. Sharp v. Knight, 224 Mo.App. 761, 26 S.W.2d 1011.

The findings and judgment should be affirmed. It is so ordered.

WOLFE, P. J., and ANDERSON, J., concur.